Presented to the Court by the foreman of the
Grand Jury in open Court, in the presence of
the Grand Jury and FILED in the U.S.
DISTRICT COURT at Seattle, Washington.

November 25 20.14

WILLIAM M. McCOOL, Clerk

By _____ Deputy

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. |
| Plaintiff, | |
| v. | INDICTMENT |
| DARRYL LEE WRIGHT, and KAREN M. BEVENS, | CR14 5539 -BHS |
| Defendants. | |

The Grand Jury Charges that:

INTRODUCTION

At all times material to this Indictment:

1.     Defendant DARYL LEE WRIGHT was a resident of Snoqualmie, Washington.

2.     Defendant KAREN M. BEVENS, was a resident of Duvall, Washington and the sister of defendant DARRYL LEE WRIGHT.

3.     The Social Security Act and related laws established a number of programs which had the basic objective of providing for the needs of individuals and their families. These programs included the Disability Insurance Benefits Program, which was administered by the Social Security Administration. The purpose of the Disability Insurance Benefits Program was to replace part of the earnings lost because of an actual

Indictment/Wright - 1

1  physical or mental impairment, as defined by federal law. Monthly benefits were paid to

2  eligible disabled persons and to eligible beneficiaries throughout the period of disability.

3  In determining an applicant's eligibility for disability insurance benefits, the Social

4  Security Administration relied on information provided by the applicants themselves or

5  persons acting on the applicant's behalf concerning, among other things, their medical

6  condition and their level and extent of work activity.

7        4.    The United States Army was a branch of the Department of Defense that

8  existed to serve the American people, to defend the Nation, to protect vital national

9  interests, and to fulfill national military responsibilities.  Their mission was to provide

10  necessary forces and capabilities to the Combatant Commanders in support of the

11  National Security and Defense Strategies.  The Army recruited, organized, trained, and

12  equipped Soldiers who, as vital members of their units and the Joint Team, conducted

13  prompt, sustained combat and stability operations on land.  The Army was also charged

14  with providing logistics and support to enable the other Services to accomplish their

15  missions, and supporting civil authorities in time of emergency, when directed.

16        5.    The National Guard of the United States was a reserve component of the

17  United States Armed Forces, composed of National Guard military members or units of

18  each state and the territories of Guam, of the Virgin Islands, and of Puerto Rico, as well

19  as of the District of Columbia.  The Washington State National Guard was a division of

20  the State of Washington Military Department, affiliated with the Department of Defense

21  through the National Guard Bureau, which was a joint activity of the Army and Air Force

22  under the Department of Defense.

23        6.    The United States Department of Veterans Affairs (VA) was a Department

24  of the United States that operated the nation's largest integrated health care system with

25  more than 1,400 sites of care, including hospitals, community clinics, community living

26  centers, domiciliary, readjustment counseling centers and various other facilities.  Any

27  person who served in the active military, naval, or air service and who was discharged or

28  released under conditions other than dishonorable may have qualified for benefits.

Indictment/Wright - 2

1  Reservists and National Guard members may also have qualified for VA benefits if called

2  to active duty (other than for training only) by a Federal order and completed the full

3  period for which they were called or ordered to active duty.

4        7.     One benefit program administered by the VA was called the Caregiver

5  Support Program.  Under the "Caregivers and Veterans Omnibus Health Services Act of

6  2010," additional VA services were available to seriously injured post-9/11 veterans and

7  their family caregivers.  Veterans were eligible for this program if they (1) sustained

8  (incurred or aggravated) a serious injury - including traumatic brain injury, psychological

9  trauma or other mental disorder - in the line of duty, on or after September 11, 2001, and

10  (2) were in need of personal care services because they could not perform one or more

11  activities of daily living and/or because they needed supervision or protection based on

12  symptoms or residuals of neurological impairment or injury.  Additional assistance was

13  available to primary family caregivers of eligible post-9/11 veterans and service

14  members.  Services and benefits available to qualified caregivers included monthly

15  stipend travel expenses (including lodging and per diem while accompanying veterans

16  undergoing care); access to health care insurance (if the caregiver was not otherwise

17  entitled to care or services under a health care plan); mental health services and

18  counseling; and comprehensive VA caregiver training provided by Easter Seals Respite

19  care.

20        8.     The United States Department of Commerce was a Department of the

21  United States that promoted job creation, economic growth, sustainable development and

22  improved standards of living for all Americans by working in partnership with

23  businesses, universities, communities and our nation's workers.  The U.S. Department of

24  Commerce's Economic Development Administration (EDA) functioned to support

25  regional economic development efforts in communities across the nation.  EDA

26  supported development in economically distressed areas of the United States through

27  strategic investments intended to foster job creation and attract private investment.    The

28

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  EDA Office in the Western District of Washington was located in Pierce County,

2  Washington.

3       9.      The United States Office of Personnel Management (OPM) was an agency

4  of the United States that, among other things, managed pension benefits for retired and

5  disabled federal employees and their families.  OPM also administered health and other

6  insurance programs for federal employees and retirees.

7       10.     The Washington State Employment Security Department was an agency of

8  the State of Washington.  One function of the Washington Employment Security

9  Department was to administer the unemployment insurance trust fund.  The

10 unemployment program pays benefits to those unemployed through no fault of their own.

11 Unemployment benefits are calculated based on earnings.  To be eligible for benefits, a

12 person must have worked at least 680 hours during his or her base year and must have

13 lost a job through no fault of his or her own.  To remain eligible each week, the claimant

14 must have been physically able to work, available for work and actively seek suitable

15 work.  Claimants were required to verify that they were meeting these requirements by

16 filing a claim each week.

17      11.     The Washington State Department of Social and Health Services, or DSHS,

18 was Washington State's social services department.  The agency was headquartered in

19 Olympia, Washington.  DSHS assisted children, families, vulnerable adults and seniors

20 by providing protection, comfort, food assistance, financial aid, medical and behavioral

21 health care and other services.

**COUNTS ONE through FIVE**
**(Wire Fraud)**

22

23

24 A.    **The Scheme to Defraud**

25      12.     From on or about January 2005, up to and including the present, in the

26 Western District of Washington, and elsewhere, Defendants DARRYL LEE WRIGHT

27 and KAREN M. BEVENS, did knowingly devise and intend to devise a scheme and

28 artifice to defraud the United States Department of Veterans Affairs, the Social Security

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   Administration, and the Washington Department of Employment Security, and to obtain

2   money and property from the United States Department of Veterans Affairs, the Social

3   Security Administration, and the Washington Department of Employment Security by

4   means of materially false and fraudulent pretenses, representations and promises, and

5   concealment of material facts.

6        13.    The essence of the scheme to defraud was for DARRYL LEE WRIGHT

7   and KAREN M. BEVENS to obtain program benefits, to include cash payments and

8   services, for which they would not have otherwise been eligible had they provided true

9   and accurate representations regarding the physical condition and capabilities of

10   DARRYL LEE WRIGHT and the provision of support and caretaker services actually

11   provided by KAREN M. BEVENS.

12   B.     **Manner and Means of the Scheme to Defraud**

13        14.    It was part of the scheme to defraud that DARRYL LEE WRIGHT

14   misrepresented a series of events he encountered while serving with the Idaho National

15   Guard in Iraq, falsely and fraudulently stating he received "traumatic brain injury," after

16   being "violently thrown" and "knocked unconscious" following a rocket attack, even

17   though he had earlier acknowledged, in other documents, "there was no damage to

18   property and no casualties."

19        15.    It was further part of the scheme that DARRYL LEE WRIGHT made

20   numerous misrepresentations to Army officials concerning the Iraq rocket attack incident

21   in an effort to persuade those officials to reclassify the attack and thereby meet the

22   necessary requirements to receive a "Combat Action Badge." (A Combat Action Badge

23   is awarded to soldiers who are personally present and actively engaging or being engaged

24   by the enemy, and performing satisfactorily in accordance with the prescribed rules of

25   engagement.)

26        16.    It was further part of the scheme that DARRYL LEE WRIGHT, having

27   successfully convinced Army officials to award a Combat Action Badge, made additional

28

Indictment/Wright - 5

1  misrepresentations regarding the Iraq rocket attack incident and alleged injuries he

2  incurred in an effort to persuade those officials to award him a "Purple Heart."

3       17.    It was further part of the scheme that DARRYL LEE WRIGHT made false

4  and fraudulent representations, and concealed material facts regarding the scope and

5  severity of the injuries he allegedly incurred following the Iraq rocket attack incident,

6  together with the consequences of those alleged injuries, in documentation seeking

7  benefits and accommodations from multiple government agencies, including the Social

8  Security Administration, the Veteran's Administration, the Department of Commerce, the

9  Office of Personnel Management, the Washington State Employment Security

10  Department, the Washington Department of Social and Health Services, and the

11  Department of Army.

12       18.    It was further part of the scheme that on or about February 8, 2010,

13  DARRYL LEE WRIGHT applied for disability payments from the Social Security

14  Administration.

15       19.    It was further part of the scheme that on or about April 5, 2010, DARRYL

16  LEE WRIGHT submitted supplemental application materials to the Social Security

17  Administration seeking disability payments, in which he represented that he was so

18  severely disabled by PTSD symptoms that he spent two-to-five days a week in bed, in a

19  fetal position; he had a caregiver, a housecleaner, and yard worker; he could not prepare

20  his own meals; he could not take public transportation or be in crowds; he could walk

21  only fifty meters; and his attention span was only five-to-ten seconds.

22       20.    It was further part of the scheme that in or about June 2012, DARRYL LEE

23  WRIGHT submitted multiple false and fraudulent invoices to the Social Security

24  Administration purporting to substantiate his claim to having hired a personal caretaker,

25  notably Karen Bevens or Bevens' Care, for caretaking services seven days a week from

26  February 2009 through June 2012.

27       21.    It was further part of the scheme that on or about October 14, 2012,

28  DARRYL LEE WRIGHT submitted an application to the Social Security Administration

Indictment/Wright - 6

1  in support of his continued receipt of disability payments, falsely reporting his sister

2  resided with him; he used a cane; and he was frightened of traffic and people.

3      22.    It was further part of the scheme that on or about November 29, 2012,

4  DARRYL LEE WRIGHT submitted an application to the Social Security Administration

5  in support of his continued receipt of disability payments, falsely reporting that KAREN

6  BEVENS was his "In Home Care Attendant" spending over 40 hours per week caring for

7  him; he was unable to function without BEVENS' or someone else's assistance; he could

8  not tie or fasten shoes/belts/buttons; he could not prepare meals; he rarely drove; he could

9  walk only 20 yards; he could not pay attention; and he could not follow spoken

10 instructions.

11     23.    It was further part of the scheme that on or about December 1, 2012,

12 DARRYL LEE WRIGHT submitted an application to the Social Security Administration

13 in support of his continued receipt of disability payments; falsely stating he could not tie

14 or fasten his shoes/buttons/belt, needed help preparing meals; went outside only a "few

15 times week"; rarely drove; could walk only 50 feet; and could pay attention for only ten

16 seconds.

17     24.    It was further part of the scheme that in or about October 2012, DARRYL

18 LEE WRIGHT sought and was awarded unemployment benefits from the Washington

19 State Employment Security Department.

20     25.    It was further part of the scheme that DARRYL LEE WRIGHT falsely

21 certified to the Washington State Employment Security Department he was actively

22 seeking employment and applying for jobs, when, in truth and in fact, he was collecting

23 disability payments based on his claims that he could not work due to a disability.

24     26.    It was further part of the scheme that on or about October 2, 2012,

25 DARRYL LEE WRIGHT, submitted false and fabricated "work search logs" listing

26 several dozen positions he had purportedly applied for to support his claim that he was

27 actively seeking employment.

28

Indictment/Wright - 7

27.     It was further part of the scheme that on or about December 6, 2012, DARRYL LEE WRIGHT submitted an online application to the Washington State Department of Social and Health Services seeking cash payments, medical benefits, food benefits, and childcare benefits, falsely stating, among other things, that he had only had $314 dollars in a bank account; he was applying for food benefits for two people in his household (for whom he buys and prepares food); he needed childcare coverage for his daughter; he was applying for assistance for no one outside his home; and his only source of income was the Social Security Administration.

28.     It was further part of the scheme that from on or about January 1, 2012, to the present, DARRYL LEE WRIGHT, submitted an Application for Immediate Retirement from federal service to the United States Office of Personnel Management, in which he falsely stated he was unable to work because of a variety of disabilities including, traumatic brain injury, post-traumatic stress disorder, depression, and anxiety, together with functional impairments resulting from the disabilities to include occupational and social impairment, gross impairment in thought process and communication, anxiety, depression, persistent danger of hurting self or others, disorientation to time or place, memory loss, and deficits in processing speed.

29.     It was further part of the scheme that DARRYL LEE WRIGHT created, forged, and fabricated documents to support his fraudulent claims for benefits and accommodations.

30.     It was further part of the scheme that DARRYL LEE WRIGHT recruited others to assist him in making false and fraudulent representations and conceal material facts to support and further the scheme.

31.     It was further part of the scheme that DARRYL LEE WRIGHT falsely claimed to government agencies from which he was seeking benefits and accommodations that his alleged combat related injuries caused a range of physical limitations to include, being "bedridden," unable to function in public, easily confused, unable to tie his shoes, in need of a full-time caregiver in his home.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

32.    It was further part of the scheme that DARRYL LEE WRIGHT engaged in a full range of physical and social activities and otherwise practiced a normal lifestyle seemingly unencumbered by any disability or infirmity to include coaching a high school basketball team, chairing the Snoqualmie City Planning Commission, serving as a board member of a hospital foundation, serving as a team member of a community emergency response team, running as a candidate for public office, serving as a member of the Snoqualmie Rotary, playing in a recreational basketball league, and participating as "sport" member at the TPC Snoqualmie Ridge Country Club.

33.   It was further part of the scheme that DARRYL LEE WRIGHT created, fabricated and forged military orders from the National Guard in order to fraudulently obtain additional leave from his job at the Economic Development Administration.

34.   It was further part of the scheme that DARRYL LEE WRIGHT made fraudulent claims regarding the scope and severity of an alleged disability to his superiors at the Economic Development Administration, claiming he could not perform his duties, and seeking additional leave for care, when in truth and fact he used the fraudulently obtained leave to coach high school basketball.

35.    It was further part of the scheme that KAREN M. BEVENS made false and fraudulent statements to the Veteran's Administration, claiming to have provided caretaker services to DARRYL LEE WRIGHT.

36.    It was further part of the scheme that DARRYL LEE WRIGHT made false and fraudulent statements to the Veteran's Administration claiming the need for, and receipt of, caretaker services from KAREN M. BEVENS.

37.    It was a further part of the scheme that on or about January 2, 2012, the Veteran's Administration accepted and enrolled DARRYL LEE WRIGHT into the Caregiver Support Program, thereby authorizing payment of caretaker services to his sister, KAREN M. BEVENS.

38.    It was further part of the scheme that DARRYL LEE WRIGHT regularly claimed to have incurred combat related injuries, including post-traumatic stress disorder,

Indictment/Wright - 9

1  for purposes of concealing his ineligibility for benefits and accommodations, deceiving

2  government investigators, and forestalling enforcement efforts seeking to expose his

3  fraudulent scheme.

4      39.    It was further part of the scheme that DARRYL LEE WRIGHT, when

5  confronted with apparent inconsistencies between his professed injuries and associated

6  limitations, and his active lifestyle choices, responded with threats, litigation,

7  discrimination claims, and claims for failure to accommodate, all undertaken in an effort

8  to discourage anyone from challenging or exposing his scheme.

9      40.    It was further part of the scheme that DARRYL LEE WRIGHT and

10  KAREN M. BEVENS fraudulently obtained hundreds of thousands of dollars in

11  government program benefits to which they would not have otherwise been authorized to

12  receive had the defrauded agencies been provided complete and accurate information

13  concerning DARRYL LEE WRIGHT's purported injuries and KAREN M. BEVINS'

14  purported provision of caretaker services.

15      41.    It was further part of the scheme that DARRYL LEE WRIGHT used the

16  proceeds of his scheme to purchase homes, cars, travel, and club memberships.

17      42.    It is further part of the scheme that as of May, 2013, DARRYL LEE

18  WRIGHT and KAREN M. BEVENS were collectively receiving $10,341 per month in

19  fraudulently obtained benefits.

20  **C.    Execution of the Scheme to Defraud**

21      43.    Beginning in or about April 7, 2010, and continuing through to the present,

22  within the Western District of Washington, and elsewhere, DARRYL LEE WRIGHT and

23  KAREN M. BEVINS, with the intent to defraud, devised and willfully executed, with

24  knowledge of its fraudulent nature, the above-described scheme and artifice to defraud

25  and obtain money by materially false and fraudulent pretenses.

26      44.    On or about the dates listed below, within the Western District of

27  Washington, and elsewhere, for the purpose of executing or attempting to execute the

28  above-described scheme, DARRYL LEE WRIGHT and KAREN M. BEVINS,

Indictment/Wright - 10

knowingly transmitted and caused to be transmitted, by wire communication in interstate

and foreign commerce, the following transmissions:

| COUNT | DATE | DEFENDANT | WIRE TRANSMISSION |
|-------|------|-----------|-------------------|
| 1 | April 7, 2010 | DARRYL LEE WRIGHT | A communication from the Social Security Administration originating in Baltimore, Maryland directing payment of $13,105 in Social Security benefit funds to DARRYL LEE WRIGHT, which transmitted a wire and signal that traveled from Baltimore, Maryland to the Washington State Employees Credit Union in Olympia, Washington. |
| 2 | December 19, 2012 | DARRYL LEE WRIGHT | A communication from the Social Security Administration originating in Baltimore, Maryland directing payment of $1,979 in Social Security benefit funds to DARRYL LEE WRIGHT, which transmitted a wire and signal that traveled from Baltimore, Maryland to the Washington State Employees Credit Union in Olympia, Washington. |
| 3 | May 31, 2012 | DARRYL LEE WRIGHT and KAREN M. BEVENS | A transmittal of funds payable under the Caretaker Support Program from the Department of Veterans Affairs to a bank account under the control of the defendants in the amount of $10,836.54, which transmitted a wire and signal that traveled from Austin, Texas to Seattle, Washington. |
| 4 | January 16, 2013 | DARRYL LEE WRIGHT | A communication from the Social Security Administration originating in Baltimore, Maryland directing payment of $1,589.50 in Social Security benefit funds to DARRYL LEE WRIGHT, which transmitted a wire and signal that traveled from Baltimore, Maryland to the Washington State Employees Credit Union in Olympia, Washington. |
| 5 | October 17, 2012 | DARRYL LEE WRIGHT | A wire communication from the Washington State Employment Security Department originating in Olympia, Washington, directing payment of $5,440 in unemployment funds to USAA Federal Savings Bank in San Antonio, Texas. |

All in violation of Title 18, United States Code, Section 1343.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**COUNTS SIX and SEVEN**
**(Mail Fraud)**

45.    The factual allegations contained in paragraphs 1 through 42 are realleged and incorporated by reference as though fully set forth herein.

46.    On or about the dates listed below, within the Western District of Washington, and elsewhere, for the purpose of executing or attempting to execute the above-described scheme to defraud the identified agencies, and for obtaining money from the identified agencies by means of false and fraudulent pretenses, representations, promises, and concealment of material facts, and attempting to do so, DARRYL LEE WRIGHT, knowingly caused to be sent and delivered by the United States Postal Service and private or commercial interstate carrier, and did knowingly and willfully take and receive therefrom, according to the direction thereon, the following mail matter, with each mailing constituting a separate count of this Indictment:

| COUNT | DATE | SENDER | ADDRESSEE | ITEM MAILED |
|-------|------|--------|-----------|-------------|
| 6 | December 7, 2012 | Washington State Department of Social and Health Services | DARRYL WRIGHT | Notice acknowledging receipt of application for benefits and scheduling interview |
| 7 | September 6, 2012 | United States Office of Personnel Management | DARRYL LEE WRIGHT | Letter advising WRIGHT that based on his application, his claim for disability retirement benefits had been approved |

All in violation of Title 18, United States Code, Section 1341.

//

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## COUNT EIGHT
### (Fraud and False Statements to the United States Army)

47.    The factual allegations contained in paragraphs 1 through 42 are realleged and incorporated by reference as though fully set forth herein.

48.    Beginning on or about September 5, 2005, and continuing to the present, in the Western District of Washington and elsewhere, DARRYL LEE WRIGHT, willfully and knowingly falsified, concealed, and covered up by trick, scheme, and device a material fact in a matter within the jurisdiction of the United States Army, by falsifying and exaggerating the events and consequences of a rocket attack in Iraq.

49.    On or about September 5, 2005, DARRYL LEE WRIGHT submitted a written request to the Army to be awarded a Combat Action Badge, based on an event that occurred in Iraq on August 30, 2005.  The event was a small explosion more than 90 meters from where he and other soldiers stood.  In his written request, DARRYL LEE WRIGHT stated there was no damage to property, no casualties, and made no mention of sustaining injury or otherwise suffering any effects from the explosion.

50.    Between September 5, 2005 and June 4, 2006, DARRYL LEE WRIGHT submitted additional information to the Army in a continued effort to be awarded a Combat Action Badge.  This additional information included a second request for a Combat Action Badge, but this time he included a false narrative describing how he suffered physical injuries from a rocket attack.  The additional narrative stated that, on August 30, 2005, DARRYL LEE WRIGHT was present at the Iraqi Army Compound, K1 Airfield, Iraq when the airfield came under an enemy rocket attack.  DARRYL LEE WRIGHT stated the attack was by a 107mm Rocket, and that he was 96 meters away from the impact.  DARRYL LEE WRIGHT falsely stated that he was, "violently thrown and knocked unconscious from the percussion of the rockets' impact."  DARRYL LEE WRIGHT also falsely stated that, at the time of the explosions, "Rubble and debris from the impact showered the sky for scores of meters and rained down where the MiT Team Vehicles were parked and the security detail was located."

Indictment/Wright - 13

51.    To further support his request for a Combat Action Badge, DARRYL LEE WRIGHT fraudulently attached a picture of a destroyed military vehicle that included a handwritten note stating "1st Lieutenant Wright's HMMWV after insurgent complex ambush in Kirkuk, Iraq (FOB Warrior) Summer 2005." In truth and fact, the military vehicle had nothing to do with the event DARRYL LEE WRIGHT now falsely claimed had caused him injury.

52.    On or about June 13, 2006, after considering DARRYL LEE WRIGHT's second submission, the Army awarded him a Combat Action Badge.

53.    On or about May 17, 2010, DARRYL LEE WRIGHT submitted a written request to the Army to be awarded a Purple Heart medal, based solely on his false claims that he was injured August 30, 2005 in Iraq in same alleged rocket attack for which he was awarded the Combat Action Badge.

54.    On or about March 28, 2011, the Army awarded DARRYL LEE WRIGHT a Purple Heart based solely on the alleged injuries he purportedly incurred as a result of the August 30, 2005 rocket attack in Iraq.

All in violation of Title 18, United States Code, Sections 1001 and 2.

### COUNT NINE
### (Department of Commerce False Statements)

55.    The factual allegations contained in paragraphs 1 through 42 are realleged and incorporated by reference as though fully set forth herein.

56.    Beginning at a time unknown, but no later than November 30, 2009, in the Western District of Washington and elsewhere, DARRYL LEE WRIGHT, willfully and knowingly falsified, concealed, and covered up by trick, scheme, and device a material fact in a matter within the jurisdiction of the United States Department of Commerce, by creating, fabricating and presenting false orders from the Washington National Guard, namely, while working as an Economic Development Specialist for the United States Department of Commerce, Economic Development Administration, DARRYL LEE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   WRIGHT fabricated and counterfeited Military Orders from the Washington National

2   Guard, which falsely stated that he was obligated and ordered for duty.

3          All in violation of Title 18, United States Code, Sections 1001and 2.

4   //

5   //

6                          **ALLEGATION OF FORFEITURE**

7          57.    The allegations contained in Counts One through Eight of this Indictment

8   are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures

9   to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(E), and

10  Title 28, United States Code, Section 2461(c).

11         58.    Upon conviction of the offenses for which they are charged in this

12  Indictment, Defendants DARRYL LEE WRIGHT and KAREN M. BEVENS, shall

13  forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(E)

14  and Title 28, United States Code, Section 2461(c), any property constituting, or derived

15  from, proceeds obtained directly or indirectly, as the result of the charged offense, and

16  any property used or intended to be used to commit the offense charged, including but not

17  limited to:  A sum of money representing the proceeds obtained as a result of the charged

18  offenses.

19  //

20  //

21  //

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    59.    Substitute Assets.  If any of the above-described forfeitable property, as a

2  result of any act or omission of the Defendants:

3          (1)    cannot be located upon the exercise of due diligence;

4          (2)    has been transferred or sold to, or disposed with, a third party;

5          (3)    has been placed beyond the jurisdiction of the Court;

6          (4)    has been substantially diminished in value; or

7          (5)    has been commingled with other property which cannot be
                  subdivided without difficulty;
8

9  the United States of America shall be entitled to forfeiture of substitute property pursuant

10 to Title 21, United States Code, Section 853(p).

11

12                                    A TRUE BILL:

13                                    DATED:  11-25-2014

14                                    *(Signature of Foreperson redacted pursuant to
                                      the policy of the Judicial Conference of the
15                                    United States)*

16

17                                    _____

18                                    FOREPERSON

19 _____
   ANNETTE L. HAYES
20 Acting United States Attorney

21

22

23 _____
   JAMES D. OESTERLE
24 Assistant United States Attorney

25

26 _____
   DAVID REESE JENNINGS
27 Assistant United States Attorney

28

Indictment/Wright - 16