Judge Benjamin H. Settle

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>DARRYL LEE WRIGHT<br><br>Defendant. | NO. CR 14-5539BHS<br><br>**PLEA AGREEMENT** |

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and David Reese Jennings, Assistant United States Attorney for said District, DARRYL LEE WRIGHT, and his attorney, Christopher Black, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure Rule 11(c)(1)(b):

1. **The Charges**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to the following chargers in the Superseding Indictment:

    a. Wire Fraud, as charged in Counts Three and Four, in violation of Title 18, United States Code, Section 1343.

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering his

PLEA AGREEMENT DARRYL LEE WRIGHT
US v. Wright, et al/CR14-5539BHS - 1

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3803

guilty pleas will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2. **Elements of the Offense.** The elements of the offense or offenses to which Defendant is pleading guilty are as follows:

    a. The elements of wire fraud, as charged in Counts Three and Four, in violation of Title 18, United States Code, Section 1343, are as follows:

**First**, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

**Second**, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

**Third**, the defendant acted with the intent to defraud, that is, the intent to deceive, or the intent to cheat; and

**Fourth**, the defendant used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.

3. **The Penalties.** Defendant understands that the statutory penalties applicable to the offense of wire fraud, as charged in Counts Three and Four, are as follows: Imprisonment for up to twenty (20) years, a fine of up to two hundred fifty thousand and no/100 dollars ($250,000.00), a period of supervision following release from prison of up to three (3) years, and a special assessment of one hundred and no/100 dollars ($100.00).

If a probationary sentence is imposed, the probation period can be for up to five (5) years. Defendant agrees that the special assessment shall be paid at or before the time of sentencing.

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictive conditions and

PLEA AGREEMENT DARRYL LEE WRIGHT
US v. Wright, et al/CR14-5539BHS - 2

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3803

requirements. Defendant further understands that if supervised release is imposed and he violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant's serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

4. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, he knowingly and voluntarily waives the following rights:

    a. The right to plead not guilty and to persist in a plea of not guilty;

    b. The right to a speedy and public trial before a jury of his peers;

    c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for him;

    d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

    e. The right to confront and cross-examine witnesses against Defendant at trial;

    f. The right to compel or subpoena witnesses to appear on his behalf at trial;

    g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

    h. The right to appeal a finding of guilt or any pretrial rulings.

PLEA AGREEMENT DARRYL LEE WRIGHT
US v. Wright, et al/CR14-5539BHS - 3

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3803

5. **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

6. **Restitution.** Defendant shall make restitution to the United States in the amount determined by the court, with credit for any amounts already paid. Defendant disputes both the amount of restitution and the victim agencies to whom he owes restitution. It is contemplated that the final determination of restitution will require a hearing before the court. The United States will seek restitution by defendant to all agencies affected by the scheme to which defendant is pleading guilty, whether they be federal or state. Under the Mandatory Victims Restitution Act ("MVRA"), the court must order full restitution to victims of a convicted offense when the offense is committed by fraud or deceit. 18 U.S.C. §§ 3663A(c)(1), 3664(f)(1)(A). In an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, the court may order restitution to any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. 18 U.S.C. § 3663A(2). The defendant understands this is true whether or not he is convicted of a count directly affecting a particular victim. The government must establish that a person or entity is a victim for purposes of restitution by a preponderance of the evidence. If the court finds that restitution is appropriate, said amount shall be due and payable immediately after the court makes its final determination, and shall be paid in accordance with a schedule of payments as proposed by the United States Probation Office and ordered by the Court.

7. **Statement of Facts.** The parties agree on the following facts. Defendant admits he is guilty of the charged offense or offenses:

   a. From an unknown time through November 2014, in the Western District of Washington, and elsewhere, Defendants DARRYL LEE WRIGHT and KAREN M. BEVENS (AKA KAREN WRIGHT) knowingly devised a scheme and artifice to defraud.

   b. The essence of the scheme was for Defendant DARRYL LEE WRIGHT and KAREN M. BEVENS to obtain benefits and things of value, including cash payments and services, for which neither would have been fully eligible had they

PLEA AGREEMENT DARRYL LEE WRIGHT
US v. Wright, et al/CR14-5539BHS - 4

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3803

provided true, complete, and accurate information regarding the capabilities of Defendant DARRYL LEE WRIGHT, and the provision of support and caregiver services actually provided by KAREN M. BEVENS.

   c. On or about September 26, 2009 to October 3, 2009, defendant DARRYL LEE WRIGHT submitted fabricated "Buddy Statements" to the Veterans Administration (VA). The fabricated Buddy Statements were attributed to real people who did not give permission to use their names. Those named in the fabricated Buddy Statements will testify that they did not complete the statements, and that they do not know of and cannot affirm the disabilities and infirmities described by defendant DARRYL LEE WRIGHT in the fabricated Buddy Statements.

   d. In addition to false Buddy Statements, defendant DARRYL LEE WRIGHT submitted Buddy Statements signed by his sister KAREN WRIGHT as well as other long-time acquaintances of DARRYL LEE WRIGHT. Though defendant DARRYL LEE WRIGHT drafted these statements, KAREN WRIGHT and DARRYL LEE WRIGHT's other acquaintances signed them and affirmed that the contents of the statements were true and accurate.

   e. On February 8, 2010, defendant DARRYL LEE WRIGHT applied for disability payments from the Social Security Administration (SSA). On April 5, 2010, defendant DARRYL LEE WRIGHT submitted supplemental application materials to the Social Security Administration seeking disability payment. In these materials, defendant DARRYL LEE WRIGHT represented that he was so severely disabled by PTSD symptoms that he spent two-to-five days a week in bed, in a fetal position; that he required a caregiver, a housecleaner, and yard worker; that he could not prepare his own meals; that he could not take public transportation or be in crowds; that he could walk only fifty meters without resting; and that his attention span was only five-to-ten seconds.

   f. In June 2012, defendant DARRYL LEE WRIGHT created and submitted invoices to the Social Security Administration that purported to show he had been paying his sister "KAREN BEVENS" to serve as his personal caregiver. The invoices showed "KAREN BEVENS" providing services an average of six days a week, from February 2009 through June 2012. By submitting the invoices, defendant DARRYL LEE WRIGHT intended to represent not only that KAREN BEVENS (AKA KAREN WRIGHT) had provided the services described in the invoices, but also that he had paid the invoices. He did this to justify his receipt of disability payments from SSA, even though he was still being paid by his employer. In fact, evidence in the form of testimony from neighbors and girlfriends will establish that defendant DARRYL LEE WRIGHT had no personal caregiver as described in the invoices and that his sister provided no such services. Former girlfriends who spent time regularly at defendant DARRYL LEE WRIGHT's residence will testify they saw no caregiver at his residence,

PLEA AGREEMENT DARRYL LEE WRIGHT
US v. Wright, et al/CR14-5539BHS - 5

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3803

and, further, that WRIGHT showed no need for a caregiver. Bank records will show that DARRYL LEE WRIGHT did not pay the invoices, and, further, that "KAREN BEVENS" never received payment for the alleged services. Neighbors will testify that they did not see KAREN WRIGHT at defendant DARRYL LEE WRIGHT's house. Records from the State of Washington will show that KAREN WRIGHT reported receiving no payments from defendant DARRYL LEE WRIGHT.

g. In addition to the false invoices, defendant DARRYL LEE WRIGHT submitted other false documents to SSA. On September 21, 2012, defendant DARRYL LEE WRIGHT submitted a notarized statement/affidavit from KAREN WRIGHT. Notary records confirm that KAREN WRIGHT signed the affidavit. The affidavit stated several false claims, including that she was the 24-hour a day, seven-day a week in home care provider for DARRYL LEE WRIGHT.

h. On May 20, 2011, DARRYL LEE WRIGHT and KAREN WRIGHT submitted an application for KAREN WRIGHT to serve as DARRYL LEE WRIGHT's primary family caregiver, through the VA Caregiver Support Program. On January 2, 2012, the VA accepted and enrolled DARRYL LEE WRIGHT into the Caregiver Support Program, thereby authorizing payment of caregiver services to his sister, KAREN M. BEVENS (aka KAREN M. WRIGHT). Based on the representations made by KAREN WRIGHT and DARRYL LEE WRIGHT, and ~~meeting~~ preconditions for entering the VA awarded benefits under the caregiver program at the highest level, or Tier III. At this level, the VA expected that DARRYL LEE WRIGHT required the highest level of care, and that KAREN WRIGHT had been and would be providing the care that both defendants described was necessary. KAREN WRIGHT accepted and spent the monthly payments, but provided little of the care for which she was being paid.

i. Witness testimony and documents will show that, during the scheme, defendant DARRYL LEE WRIGHT was able to coach basketball, go on vacation, travel to Idaho by himself to visit his daughter, attend school, serve on the Snoqualmie Planning Commission, and engage in many other activities. Further, DARRYL LEE WRIGHT received only limited caregiver services during the scheme. The false affidavit signed by KAREN WRIGHT and submitted to SSA by DARRYL LEE WRIGHT was intended to support the false invoices already submitted by DARRYL LEE WRIGHT to SSA. Agents and Detectives will confirm they observed no caregiver at his home when they visited in July 2013. Witnesses, including defendant WRIGHT's current girlfriend and his ex-girlfriend, will confirm that KAREN WRIGHT was not providing daily care to defendant WRIGHT as described in the affidavit.

j. Whenever necessary, KAREN WRIGHT would provide cover for DARRYL LEE WRIGHT when he needed to explain his absence or behavior. KAREN WRIGHT would write and send emails, make phone calls, and take others steps to cover

PLEA AGREEMENT DARRYL LEE WRIGHT
US v. Wright, et al/CR14-5539BHS - 6

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3803

for defendant DARRYL LEE WRIGHT when his activities, vacations, and travel--if detected or reported--might interfere with his continued receipt of benefits. For example, when defendant WRIGHT had KAREN WRIGHT email Bellevue College professors to tell them that DARRYL's assignments would be late because of a "flare-up" of his PTSD symptoms, when in fact DARRYL was away on travel or vacation.

   k. Witness testimony, documents, and a chronology of travel and other activities will show that, during the time of the scheme, defendant DARRYL LEE WRIGHT engaged in a wide range of physical and social activities, and was able to function in a manner that exceeded the capacity described in the function report he submitted to the Social Security Administration.

   l. On March 9, 2013, KAREN WRIGHT executed another false sworn statement, witnessed by DARRYL LEE WRIGHT's girlfriend at the time. In the Sworn Statement, KAREN WRIGHT repeatedly referred to herself as the full-time, in-home, VA caregiver for DARRYL LEE WRIGHT. She repeatedly cited her presence as caregiver as the basis of her opinion about DARRYL LEE WRIGHT's physical and mental state.

   m. The scheme was executed for Counts Three and Four in the following manner on the indicated dates:

| | | | |
|---|---|---|---|
| 3 | May 31, 2012 | DARRYL LEE WRIGHT and KAREN M. BEVENS (AKA KAREN M. WRIGHT) | A transmittal of funds payable under the Caregiver Support Program from the Department of Veterans Affairs to a bank account under the control of the defendants in the amount of $10,836.54, which transmitted a wire and signal that traveled from Austin, Texas to Seattle, Washington. |
| 4 | January 16, 2013 | DARRYL LEE WRIGHT and KAREN M. BEVENS (AKA KAREN M. WRIGHT) | A communication from the Social Security Administration originating in Baltimore, Maryland directing payment of $1,589.50 in Social Security benefit funds to DARRYL LEE WRIGHT, which transmitted a wire and signal that traveled from Baltimore, Maryland to the Washington State Employees Credit Union in Olympia, Washington. |

   8. Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in

PLEA AGREEMENT DARRYL LEE WRIGHT
US v. Wright, et al/CR14-5539BHS - 7

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3803

Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offenses; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

    a.    The Court will determine applicable Defendant's Sentencing Guidelines range at the time of sentencing;

    b.    After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

    c.    The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

    d.    Defendant may not withdraw his guilty pleas solely because of the sentence imposed by the Court.

9.    **Acceptance of Responsibility.** At sentencing, *if* the district court concludes Defendant qualifies for a downward adjustment acceptance for acceptance of responsibility pursuant to USSG § 3E1.1(a) and the defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the district court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of

PLEA AGREEMENT DARRYL LEE WRIGHT
US v. Wright, et al/CR14-5539BHS - 8

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3803

his intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

10. **Sentencing Factors.** Sentencing Factors. The parties disagree about the amount of loss and damage resulting from execution of the scheme to which defendant is pleading guilty, and further disagree about the scope of certain relevant conduct alleged to have been conducted as part of the manner and means of the scheme.  Accordingly, the parties expect that the court shall conduct a sentencing hearing to determine the amount of loss and damages resulting from execution of the scheme, and that the court will make factual findings before issuing its determination at sentencing.  Defendant understands, however, that at the time of sentencing, the court is free to reject any stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

11. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation.  In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement.  Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub.L. No. 105-119 (1997).

PLEA AGREEMENT DARRYL LEE WRIGHT
US v. Wright, et al/CR14-5539BHS - 9

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3803

12. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Indictment that were previously dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of his confinement, (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the plea agreement.

13. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that by entering the guilty plea(s) required by this plea agreement, Defendant waives all rights to appeal from his conviction and any pretrial rulings of the court. Defendant further agrees that, provided the court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the court at the time of sentencing, Defendant waives to the full extent of the law:

PLEA AGREEMENT DARRYL LEE WRIGHT
US v. Wright, et al/CR14-5539BHS - 10

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3803

  a. Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

  b. Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation; and

 This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of his confinement or the decisions of the Bureau of Prisons regarding the execution of his sentence.

 If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

 14. **Voluntariness of Plea**. Defendant agrees that he has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter his pleas of guilty.

 15. **Statute of Limitations**. In the event this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

 16. **Completeness of Agreement**. The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties.

PLEA AGREEMENT DARRYL LEE WRIGHT
US v. Wright, et al/CR14-5539BHS - 11

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3803

This Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 25th day of February, 2016.

_____
DARRYL LEE WRIGHT
Defendant

_____
CHRISTOPHER BLACK
Attorney for Defendant

_____
DAVID REESE JENNINGS
Assistant United States Attorney

PLEA AGREEMENT DARRYL LEE WRIGHT
US v. Wright, et al/CR14-5539BHS - 12

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3803