The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR14-5539 BHS |
| Plaintiff, | |
| v. | DEFENDANT'S MEMORANDUM REGARDING SENTENCING GUIDELINE CALCULATIONS |
| DARRYL WRIGHT, | |
| Defendant. | |

Defendant Darryl Wright, by his attorney, Christopher Black, submits the following memorandum regarding the calculation of the sentencing guidelines in this case.

## I.      **INTRODUCTION**

The plea agreement in this case does not include an agreement on the applicable loss amount under the Section 2B1.1(b) of the United States Sentencing Guidelines, or on the applicability of any other guidelines.  Likewise, the plea agreement does not contain facts sufficient to establish the applicability of the guidelines.  The parties anticipate holding an evidentiary hearing as part of the sentencing that will address the facts relevant to the guideline calculations.  Defendant submits this memorandum to address relevant facts and legal standards in advance of the hearing. Defendant submits this memorandum separately from the sentencing memorandum due to the scope of the relevant facts and disputed issues.

## II.    APPLICABLE LEGAL STANDARDS

### A.    Burden of Proof

At sentencing, the Government generally bears the burden of establishing any facts that enhance a sentence by a preponderance of the evidence. See United States v. Tam, 240 F.3d 797, 803 (9th Cir. 2001)("At sentencing, the government bears the burden of proving factors enhancing a sentence by a preponderance of the evidence.").  As such, with one exception- loss amount, discussed *infra* in section III(A)(1) of this brief, the Government has the burden to establish all relevant aggravating specific offense characteristics and sentence adjustments in this matter by a preponderance of the evidence.

### B.    Evidence

As the Government has previously noted (Dkt. 173), the Court can accept a wide variety of information at sentencing.  The Ninth Circuit has held that "the district court may rely on undisputed statements in the PSR at sentencing.… However, when a defendant raises objection to the PSR, the district court is obligated to resolve the factual dispute, and the government bears the burden of proof..... The court may not simply rely on the factual statements in the PSR." United States v. Ameline, 409 F.3d 1073, 1085-86 (9th Cir. 2005)(en banc).  In making factual determinations, the Court may consider any information, so long as it has sufficient indicia of reliability to support its probable accuracy. U.S.S.G. § 6A1.3 (Policy Statement).[1]

---

[1] U.S.S.G. § 6A1.3 (Policy Statement) provides in full:

  (a)  When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

DEFENDANT'S MEMORANDUM REGARDING
SENTENCING GUIDELINE CALCULATIONS
(*Darryl Wright*; No. CR14-5539 BHS) - 2

Hearsay evidence may be considered only if it is shown to be reliable. <u>United States v. Petty</u>, 982 F.2d 1365, 1367 (9th Cir. 1993), <u>cert. denied</u>, 510 U.S. 1040 (1994); U.S.S.G. § 6A1.3, Commentary. Unreliable allegations shall not be considered. <u>United States v. Weston</u>, 448 F.2d 626 (9th Cir.1971); <u>United States v. Ortiz</u>, 993 F.2d 204 (10th Cir. 1993); U.S.S.G. § 6A1.3, Commentary.

## III.   ADVISORY GUIDELINE CALCULATIONS

The Court should calculate the advisory sentencing guideline range in the following manner:

| | |
|---|---|
| <u>Base Offense Level</u> (U.S.S.G. § 2B1.1(a)(1)): | 7 |
| <u>Specific Offense Characteristics</u> | |
| Loss Amount between $15,000 and $40,000 (U.S.S.G. § 2B1.1 (b)(1)(C)): | +6 |
| <u>Adjustments</u> | |
| Acceptance of Responsibility (U.S.S.G. § 3E1.1): | -2 |
| <u>Adjusted Offense Level</u>: | 11 |
| **Advisory Range** (Offense Level 11, Criminal History Category I) | **8-14 months** |

The base offense level, criminal history category, and possibly the adjustment for acceptance of responsibility are undisputed. The loss amount, as well as numerous offense characteristics and adjustments, are disputed. The Probation Office has recommended a 14-level increase based on the loss amount, a 2-level adjustment for use of sophisticated means, and a 2-level aggravating role adjustment. The Government will likely recommend further enhancements. The disputed issues are addressed below.

---

(b) The court shall resolve disputed sentencing factors at a sentencing hearing in accordance with Rule 32(i), Fed. R. Crim. P.

DEFENDANT'S MEMORANDUM REGARDING
SENTENCING GUIDELINE CALCULATIONS
(*Darryl Wright*; No. CR14-5539 BHS) - 3

BLACK LAW, PLLC
1111 Hoge Building, 705 Second Avenue
Seattle, WA 98104
206.623.1604 | Fax: 206.658.2401

### A. **Loss Amount (U.S.S.G. § 2B1.1 (b)(1))**

Under the circumstances of this case, the calculation of the loss amount is an exception to the rule that the Government need only establish facts enhancing a sentence by a preponderance of the evidence. Here, the Court should require the Government to establish the loss amount in this case by clear and convincing evidence, due to its disproportionate impact relative to the offense of conviction on the potential sentence in this matter. Because the evidence expected to be presented to the Court will not be sufficient to establish the loss amount proffered by the Government by clear and convincing evidence, the Court should adopt the loss amount proffered by the defense.

### 1. **The Government must establish the loss amount by clear and convincing evidence.**

Generally, factual findings underlying sentence enhancements must be supported by a preponderance of the evidence. <u>United States v. Munoz</u>, 233 F.3d 1117, 1126 (9th Cir. 2000), <u>superseded by regulation on other grounds as stated in United States v. Van Alstyne</u>, 584 F.3d 803, 817-18 (9th Cir. 2009). This is the case when sentencing enhancements are based on the offense of conviction. <u>United States v. Berger</u>, 587 F.3d 1038, 1048 (9th Cir. 2009). When, however, the combined impact of contested sentencing enhancements is disproportionate relative to the offense of conviction, the district court must apply the clear and convincing evidence standard of proof. <u>United States v. Valensia</u>, 222 F.3d 1173, 1182 (9th Cir. 2000). There is no bright-line rule for determining when the clear and convincing evidence standard applies. <u>Id</u>.

The court in <u>Valensia</u> listed six factors that are to be examined to determine whether the clear and convincing standard applies: (1) whether the enhanced sentence falls within the maximum sentence for the crime alleged; (2) whether the enhanced sentence negates the

DEFENDANT'S MEMORANDUM REGARDING
SENTENCING GUIDELINE CALCULATIONS
(*Darryl Wright*; No. CR14-5539 BHS) - 4

BLACK LAW, PLLC
1111 Hoge Building, 705 Second Avenue
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

presumption of innocence for the crime alleged in the indictment; (3) whether the facts offered in support of the enhancement create new offenses requiring separate punishment; (4) whether the increase in sentence is based on the extent of a conspiracy; (5) whether the increase in the number of offense levels is four or less; and (6) whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range where the defendant would otherwise have received a relatively short sentence. <u>Valensia</u>, 222 F.3d at 1182.  None of the factors are dispositive; rather the Court must look at the totality of the circumstances. <u>Id</u>.

The Court should require the government to establish the loss amount in this case by clear and convincing evidence because the proposed loss amount has a disproportionate impact on the sentencing decision.  The presentence report recommends an enhancement of 14 levels based on an alleged loss amount over $550,000. PSR, at ¶ 20.  The loss amount corresponding to the counts of conviction in the plea agreement is $12,426.04. <u>See</u> Plea Agreement, Dkt. No. 90, at 12.  This loss range corresponds to an upward adjustment of 2 levels. U.S.S.G. § 2B1.1(b)(1)(B).  The defense concedes that Mr. Wright is responsible for a total loss amount between $15,000 and $40,000.  This loss range corresponds to an upward adjustment of 6 levels. U.S.S.G. § 2B1.1(b)(1)(C).  As such, if the court were to apply the enhancement proposed by the Probation Office, Mr. Wright's offense level would increase by 8 levels.  This is the exact type of disparate impact that the Ninth Circuit has held requires the application of the clear and convincing evidence standard of proof.

In <u>United States v. Hymas</u>, 780 F.3d 1285 (9th Cir. 2015), the Ninth Circuit held that the clear and convincing standard should have been applied to losses not incorporated in the count of conviction that increased the offense level by eight levels. <u>Id</u>. at 1291.  The Court based this

BLACK LAW, PLLC
1111 Hoge Building, 705 Second Avenue
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

1    holding on the fact that the fifth (increase of more than 4 levels) and sixth (more than doubles

2    the range) <u>Valensia</u> factors supported it, despite the fact that the first four did not. <u>Id</u>.

3        In this case, the loss amount proposed by the Probation Office corresponds to an

4    increase of 12 offense levels above the amount corresponding to the counts of conviction (from

5    2 to 14) and 8 offense levels above the amount corresponding to the loss conceded by the

6    defense (from 6 to 14) (<u>Valensia</u> factor 5).  Further, the enhancement increases the standard

7    range by at least three times (<u>Valensia</u> factor 6). <u>See also, United States v. Jordan</u>, 256 F.3d 922,

8    929 (9th Cir. 2001) (finding that factors one through four did not apply to that case, but

9    reversing the defendant's sentence based on the last two: an increase of nine offense levels, and

10   an increase of the standard range from 70-87 months to 151-188 months).  Additionally, the

11   proposed enhancement is not based on the extent of a conspiracy (<u>Valensia</u> factor 4). <u>See United</u>

12   <u>States v. Harrison-Philpot</u>, 978 F.2d 1520, 1523-24 (9th Cir.1992) (holding that where a

13   defendant was charged and convicted of conspiracy, and the extent of the conspiracy caused the

14   tremendous increase in her sentence, the enhancement was "on a fundamentally different plane

15   than" an enhancement based on uncharged conduct, and the clear and convincing standard was

16   not required).  Further, the Government is seeking to include losses related to conduct that

17   constitutes separate offenses (<u>Valensia</u> factor 3).  All of these factors demand that the court

18

19   apply the clear and convincing standard in this case.

20       **2.    The Government will not be able to establish the loss amounts set forth in
             the PSR.**

21

22       The defense expects the Government to contend that the Court should count the

23   following as loss amounts under U.S.S.G. § 2B1.1 (b)(1): $134,675.33 in VA disability

24   benefits, $181,438.20 in Social Security disability benefits, $129,116.41 in unearned salary

25   from the Department of Commerce, $48,226.49 in federal retirement benefits, $29,860 in

BLACK LAW, PLLC
1111 Hoge Building, 705 Second Avenue
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

unemployment benefits, $81,423 in VA caregiver benefits, and $40,846 in student loan forgiveness. See PSR at ¶ 14.  These are addressed in turn.

      a)  VA disability benefits

The defense submits that the VA disability benefits that Mr. Wright received should not be counted as losses under the sentencing guidelines, on the basis that Mr. Wright met all of the medical criteria for the ratings he received through the VA at the time they were received, despite his admitted fraud.  This argument is based on the letter of Nicole Franklin, dated August 16, 2016, attached hereto as Exhibit 1.

      b)  Social Security disability benefits

The defense submits that the Social Security disability benefits that Mr. Wright received should not be counted as losses under the sentencing guidelines, on the basis that Mr. Wright met all of the criteria for Social Security disability through the Social Security Administration (SSA) when he applied and was ultimately approved on April 10, 2010, and that Mr. Wright continued to be medically and otherwise eligible for these benefits until his benefits were ceased by SSA in February of 2015.  This argument is based on the letter of Nicole Franklin, dated August 16, 2016, attached hereto as Exhibit 2.

      c)  Unearned salary from the Department of Commerce, Federal retirement benefits, Unemployment benefits

The defense objects to the inclusion of these alleged losses in the guideline calculations. At this point it remains unclear to the defense exactly how the Government intends to establish that these alleged loss amounts should be incorporated into Mr. Wright's sentencing guideline calculations.  The alleged losses are not based to any of the facts admitted in Mr. Wright's plea agreement. Further, it is unclear that any alleged underlying conduct is criminal or that it consists of relevant conduct under U.S.S.G. § 1B1.3.  The Government has indicated that

DEFENDANT'S MEMORANDUM REGARDING
SENTENCING GUIDELINE CALCULATIONS
(*Darryl Wright*; No. CR14-5539 BHS) - 7

BLACK LAW, PLLC
1111 Hoge Building, 705 Second Avenue
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

additional information may be forthcoming.  As such, the defense may need to supplement this memorandum.

       d)  <u>VA Caregiver benefits</u>

       The defense proposes that the Court adopt a loss amount of $20,000 pertaining to the VA Caregiver Program.  The starting point for this calculation is the $40,000 figure that the Court established as a restitution figure for Mr. Wright's co-defendant, Karen Wright.  That figure presumably represents a finding that Ms. Wright performed roughly half of her duties as Mr. Wright's caregiver; i.e. she failed to perform $40,000 worth of work.  The reason that the defense suggests a figure of $20,000 is that Mr. Wright had other people assisting in his care who were listed as secondary caregivers and who made up for a substantial portion of the assistance that Ms. Wright was not providing.  These caregivers included Chuck Wright, Elaine Spalding, and Heather Munden.  The secondary caregivers, particularly Ms. Munden, provided a significant amount of assistance to Mr. Wright during the time he was in the program, including the same type of assistance that Ms. Wright provided.  Our figure of $20,000 represents an estimate that the secondary caregivers provided half of the support that Ms. Wright failed to provide.

       e)  <u>Student loan forgiveness</u>

       The defense objects to the inclusion of these alleged losses in the guideline calculations. For this allegation as well, it remains unclear to the defense exactly how the Government intends to establish that this alleged loss should be incorporated into Mr. Wright's sentencing guideline calculations.  The alleged losses are not based to any of the facts admitted in Mr. Wright's plea agreement. Further, it is unclear that any alleged underlying conduct is criminal or that it consists of relevant conduct under U.S.S.G. § 1B1.3.

DEFENDANT'S MEMORANDUM REGARDING
SENTENCING GUIDELINE CALCULATIONS
(*Darryl Wright*; No. CR14-5539 BHS) - 8

BLACK LAW, PLLC
1111 Hoge Building, 705 Second Avenue
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

It appears that one of the ways in which a person can qualify for discharge of federal student loans is by submitting documentation showing that the VA has determined that s/he is unemployable due to a service-connected disability, i.e. rated as 100% disabled. <u>See</u> Exhibit 3 at 2    (https://studentaid.ed.gov/sa/repay-loans/forgiveness-cancellation/disability-discharge). Because the VA has determined that Mr. Wright is 100% disabled, and his actions in this matter should not impact this determination (<u>see</u> Exhibit 1), Mr. Wright's student loan forgiveness should not count as relevant conduct.

    **3.**    **The Court should find that the loss amount was between $15,000 and $40,000.**

The defense submits the appropriate range of loss is $15,000 - $40,000, which incorporates losses from the VA Caregiver Program.  This loss range corresponds to an upward adjustment of 6 levels. U.S.S.G. § 2B1.1(b)(1)(C).

**B.  <u>Role adjustment (U.S.S.G. § 3B1.1)</u>**

The Court should refrain from applying an aggravating role adjustment because the evidence does not support its application.   In particular, Mr. Wright should not be subject to a role adjustment because he did not exercise control over any other participants in the offense.

To qualify for an aggravating role adjustment, "the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, Application Note 2.  For an increase under section 3B1.1 to be appropriate, there must be evidence to support a finding that the defendant occupied one of the four specified roles, not merely that the defendant was more culpable than others who participated in the crime. <u>United States v. Harper</u>, 33 F.3d 1143, 1150 (9th Cir. 1994); <u>United States v. Hoac</u>, 990 F.2d 1099, 1111 (9th Cir.1993), <u>cert. denied</u>, 510 U.S. 1120 (1994).  To sustain a finding that a defendant in fact played one of the four specified roles, there must be evidence that the defendant

BLACK LAW, PLLC
1111 Hoge Building, 705 Second Avenue
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

exercised some control over others involved in commission of the offense or was responsible for organizing others for the purpose of carrying out the crime. United States v. Lopez-Sandoval, 146 F.3d 712, 717 (9th Cir. 1998); Harper, 33 F.3d 1143, 1150-51; United States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir.1990).   Under Ninth Circuit precedent "even a defendant with an important role in an offense cannot receive an enhancement unless there is also a showing that the defendant controlled others." See United States v. Whitney, 673 F.3d 965, 975 (9th Cir. 2012).   Because the element of control is lacking in this case, the Court should refrain from applying a role enhancement.

The defense presumes that the Probation Office is proposing to apply this enhancement relative to Karen Wright.   The defense is aware of no evidence suggesting that Mr. Wright in any manner whatsoever exercised control over Ms. Wright's activities.   The attached email (Exhibit 4) clearly demonstrates the nature of Mr. Wright's relationship with his sister relative to the scheme at issue in this case.   It demonstrates that Mr. Wright wanted more assistance from his sister than she was giving, and that Mr. Wright basically had to plead with her for more help.   It is clear from the tone and content of the exchange that Mr. Wright had no control whatsoever over Ms. Wright or her activities.   Thus a role adjustment is not appropriate.

As to the Government's suggestion that Mr. Wright should be subject to a four-level enhancement based on the alleged involvement of others in the scheme, the Probation Office should reject it based on the fact that there is no evidence that anyone else was criminally responsible for the commission of the offense.   The Commentary to U.S.S.G. § 3B1.1 provides that in order "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, Commentary, Application Note 2.   The commentary further provides the definition of a

DEFENDANT'S MEMORANDUM REGARDING
SENTENCING GUIDELINE CALCULATIONS
(*Darryl Wright*; No. CR14-5539 BHS) - 10

BLACK LAW, PLLC
1111 Hoge Building, 705 Second Avenue
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

"participant."   Application Note 1 states:   "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted.   A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant." Id., at Note 1.   While the Government has provided a few stray facts about others who may have taken actions that contributed in some way to Mr. Wright's crimes, the Government has fallen far short of establishing that anyone else committed criminal acts, which obviously require, among other things, *mens rea*.

### C.  Sophisticated Means (U.S.S.G. § 2B1.1(b)(10)(C))

The defense objects to the application of an enhancement for use of sophisticated means. The Probation Office asserts that a two-level sophisticated means enhancement is appropriate based upon the fact that Mr. Wright created counterfeit documents in the execution of his offenses.   The defense submits that the fact that Mr. Wright created counterfeit documents is insufficient to warrant application of the adjustment. Application Note 9(B) to U.S.S.G. § 2B1.1 provides that the sophisticated means enhancement applies to "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts" or where the scheme involves branches in more than one jurisdiction. U.S.S.G. § 2B1.1 Application Note 9(B).   The Ninth Circuit has explained that the application of the sophisticated means enhancement requires more than is necessary to commit the offense. United States v. Montano, 250 F.3d 709, 715 (9th Cir. 2001) ("The factors the district court relied on are common, not especially sophisticated, and were employed, not to conceal, but simply to carry out the smuggling scheme.").   The Fourth Circuit recently explained in United States v. Adejopu, 765 F.3d 250, 257 - 58 (4th Cir. 2014), a bank fraud case, that "the realm of

DEFENDANT'S MEMORANDUM REGARDING
SENTENCING GUIDELINE CALCULATIONS
(*Darryl Wright*; No. CR14-5539 BHS) - 11

BLACK LAW, PLLC
1111 Hoge Building, 705 Second Avenue
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

especial complexities and intricacies involves more than the forgeries, misrepresentations, and concealment inherent in bank fraud." See Adepoju, 756 F.3d at 257.

Even the most basic mail and wire fraud schemes involve the transmission of forged or fraudulent documents.   See e.g., United States v. Hance, 501 F.3d 900 (8th Cir. 2007) (enhancement improper in "garden variety" mail fraud case where defendant rented post office box under fake name and mailed fabricated letters and testimonials).   Indeed, wire fraud by definition involves the transmission of false or fraudulent writings for the purpose of executing a scheme to defraud.   See 18 U.S.C. § 1343.   Mr. Wright admitted to submitting false Buddy Statements to the VA and false invoices for caregiver services to the Social Security Administration.   All that can be said about Mr. Wright's conduct is that he transmitted fraudulent writings in the execution of a scheme to defraud, the minimal conduct required for a conviction under the wire fraud statute.   Nothing about Mr. Wright's scheme was sophisticated and no measures were taken by Mr. Wright to cover up his offenses. Because more is necessary than a scheme to defraud before the sophisticated means enhancement can be applied in a wire fraud case, application of the sophisticated means enhancement is inappropriate in Mr. Wright's case.   See Montano, 250 F.3d at 715.

Finally, the fact that the forged Buddy Statements were not material to the offense should militate against an application of the enhancement.   Mr. Wright obtained actual signatures on three sets of statements.   These would have been entirely sufficient.   It can hardly be said to be sophisticated to unnecessarily create fake documents.

### D.  Misrepresentation about Acting on Behalf of Charitable Organization (U.S.S.G. § 2B1.1(b)(9))

The defense agrees with the Probation Office that the Court should not apply an adjustment under U.S.S.G. § 2B1.1(b)(9) for misrepresentations about acting on behalf of

BLACK LAW, PLLC
1111 Hoge Building, 705 Second Avenue
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

wounded veterans, as suggested by the government.   The application note to U.S.S.G. § 2B1.1(b)(9) provides that an adjustment is appropriate only when: "the defendant represented that the defendant was acting to obtain a benefit on behalf of a charitable . . . or political organization, when in fact, the defendant intended to divert all or part of that benefit (e.g. for the defendant's personal gain)."   U.S.S.G. § 2B1.1 App. Note 8.   Mr. Wright never asserted that he was seeking benefits on behalf of any organization which he subsequently diverted for himself. Mr. Wright made clear that the benefits he sought were intended for his sole benefit.   The mere fact that Mr. Wright invoked his status as a wounded veteran falls far short of what is necessary for an adjustment under section 2B1.1(b)(9).

### E.  Official Victim (U.S.S.G. § 3A1.2) or Vulnerable Victim (U.S.S.G. § 3A1.1)

The defense agrees with the Probation Office that the Court should not apply an adjustment for Official Victim U.S.S.G. § 3A1.2, or for a Vulnerable Victim, U.S.S.G. § 3A1.1 relative to the use of other soldiers' identities in the application for Mr. Wright's Combat Action Badge, as suggested by the government.

First and foremost, Mr. Wright categorically denies using the identities of anybody, in the military or otherwise, in conjunction with his receipt of the Combat Action Badge.   The defense is aware that a number of the soldiers whose signatures appear on forms submitted in support of the application for Mr. Wright's Combat Action Badge have not acknowledged signing the forms.   The defense has no basis to challenge the good faith and honor of these soldiers and does not do so.   However, we do submit that any failure to acknowledge the signing of the forms is based on lack of memory, which is likely supported by the belief that Mr. Wright probably forged these documents since he has forged other documents.   Mr. Wright categorically and unequivocally denies forging signatures on documents related to his Combat

DEFENDANT'S MEMORANDUM REGARDING
SENTENCING GUIDELINE CALCULATIONS
(*Darryl Wright*; No. CR14-5539 BHS) - 13

BLACK LAW, PLLC
1111 Hoge Building, 705 Second Avenue
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

Action Badge or altering any documents after they were signed.  Mr. Wright recently underwent and passed a polygraph examination on this very proposition, among others.  See Exhibit 5 (August 4, 2016 report of polygrapher Norman R. Matzke, M.A.).[2]  Finally, the Government has not presented evidence establishing that Mr. Wright submitted the relevant statements to the Army.

Even if the Government were able to establish that Mr. Wright was responsible for the statements and that the statements were forged, the Sentencing Guidelines provide that application of an adjustment under U.S.S.G. § 3A1.2 is appropriate only when the victim of the defendant's offense is a government official who is targeted because of his or her status as such, and that application of the adjustment is inappropriate when the victim of the offense is the United States or a governmental organization.   In fact, the application note to § 3A1.2 specifically states:  "This guideline does not apply when the only victim is an organization, agency, or the government."   In the instant case, even if Mr. Wright had used the identities of other veterans it would not have been based upon their status as government employees.  Rather it would have been because they were individuals who were known to Mr. Wright and would have logically been able to corroborate his claims.  Moreover, Mr. Wright pleaded guilty to committing offenses against the VA and the SSA.  Consequently, because the victims of Mr. Wright's offenses were government organizations, application of an adjustment under § 3A1.2 is inappropriate.  Finally, the defense submits that even if Mr. Wright had used the identities of other soldiers to obtain a Combat Action Badge in 2004 and 2005, or to obtain leave from the

---

[2] A trial judge possesses broad discretion in determining whether he should consider polygraph evidence at sentencing.  United States v. Givens, 767 F.2d 574, 585 (9th Cir. 1985).  The Court should accept this evidence in this case given that Mr. Wright has no other way to establish the truth of his denials of these forgeries.  Further, despite anything in Mr. Wright's history, there is no information indicating that he would be any less susceptible to a polygraph test than anyone else.

DEFENDANT'S MEMORANDUM REGARDING
SENTENCING GUIDELINE CALCULATIONS
(*Darryl Wright*; No. CR14-5539 BHS) - 14

Department of Commerce in 2009, it cannot be considered as relevant conduct because it did not occur "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." <u>See</u> U.S.S.G. § 1B1.3(a)(1).  The offenses to which Mr. Wright pleaded guilty occurred in 2012 and 2013, years after Mr. Wright allegedly employed the identities of other soldiers.

Nor is it appropriate to apply a vulnerable victim enhancement in this case under U.S.S.G. § 3A1.1.   Under U.S.S.G. § 3A1.1, "the United States Government cannot be considered a vulnerable victim." <u>See</u> <u>United States v. Grier</u>, 190 F.3d 661, 665 (5th Cir. 1999).

### F.  <u>Abuse of a Position of Trust (U.S.S.G. § 3A1.3)</u>

The defense agrees with the Probation Office that the Court should not apply an adjustment for Abuse of a Position of Trust enhancement under U.S.S.G. § 3A1.3, as the Government has proposed.  That enhancement may only be applied where the defendant was employed in a position of "public or private trust characterized by professional or managerial discretion." U.S.S.G. § 3A1.3 App. Note 1.  It is not possible to shoehorn Mr. Wright's veteran status into the narrow scope of § 3A1.3 because he did not hold a position as a public or private employee characterized by professional or managerial discretion at the time of the commission of the offenses in question.

### G.  <u>Obstruction of Justice (U.S.S.G. § 3C1.1)</u>

The defense agrees with the Probation Office that the Court should not apply an adjustment for obstruction of justice.  As noted in the PSR, while Mr. Wright did contact a number of his friends who were also witnesses, there is simply no evidence that Mr. Wright attempted to influence anybody to do anything at all, let alone something improper, such as refrain from talking to authorities, or not say anything about particular facts, or lie.  Likewise,

DEFENDANT'S MEMORANDUM REGARDING
SENTENCING GUIDELINE CALCULATIONS
(*Darryl Wright*; No. CR14-5539 BHS) - 15

BLACK LAW, PLLC
1111 Hoge Building, 705 Second Avenue
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

there is no evidence that anyone was disturbed, frightened or intimidated by Mr. Wright in any way.

If anything, Mr. Wright did the opposite of attempt to obstruct justice.  His conduct consisted essentially of admitting his wrongdoing, apologizing, and telling his friends to be honest with investigators if they were contacted.  Mr. Wright knew that his friends could potentially be torn by their loyalty to him and he did not want them to get into any trouble.  It is notable that both individuals did in fact speak to investigators and implicate Mr. Wright both regarding his past actions and current admissions.

**H.  <u>Acceptance of Responsibility (U.S.S.G. § 3E1.1)</u>**

The Probation Office and the Government have both suggested that Mr. Wright's positions and statements at least call into question his acceptance of responsibility in this matter.  The defense respectfully submits that this suggestion is based on a misapprehension of Mr. Wright's position.

First, the Probation Office noted that Mr. Wright denied submitting affidavits to the VA stating that Karen Wright provided him with 24-hour in-home care.  This is not an accurate description of Mr. Wright's objection.  The PSR notes that both Mr. Wright and Ms. Wright submitted such statements. PSR, ¶ 12.   The defense objection was simply meant to clarify the fact that there was only one such affidavit, which Ms. Wright signed and Mr. Wright submitted.  The PSR also notes that Mr. Wright denies that he submitted requests to be awarded the Combat Action Badge.  This is also not accurate.  Mr. Wright simply objected to the assertion that he had on the basis that the defense is unaware of evidence establishing that he submitted such applications.  This may be a somewhat technical distinction, but it is the very technicality that the question of whether or not Mr. Wright is accepting responsibility turns on.

BLACK LAW, PLLC
1111 Hoge Building, 705 Second Avenue
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

The Commentary to U.S.S.G. § 3E1.1 provides that the following are appropriate considerations in determining whether a defendant qualifies for an adjustment for acceptance of responsibility:

> truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.

U.S.S.G. § 3E1.1, Application Note 1(A).

This section of the Commentary establishes that Mr. Wright is proceeding in a manner that is entirely consistent with his acceptance of responsibility.  Mr. Wright pleaded guilty and admitted facts in support of his conviction.  Further, he has acknowledged that his actions were wrong and that he has hurt people. See Exhibit 1 to Defendant's Sentencing Memorandum. He acknowledges that he should go to prison. Id.  Also, Mr. Wright has not falsely denied anything. The only allegations that Mr. Wright has affirmatively denied are: 1) forging documents related to the CAB application; and 2) forging James Rowe's or Steve Prenesti's signatures on Buddy Statements.  Mr. Wright has undergone and passed a polygraph related to these denials. See Exhibit 5.  As to the balance of Mr. Wright's objections to the PSR, they are based on the proposition that the Government bears the burden to establish aggravating factors.  This is not inconsistent with acceptance of responsibility.  A defendant is not required to affirmatively admit conduct beyond the offense of conviction to qualify for acceptance of responsibility.  Finally, the defense cannot be said to be frivolously contesting relevant conduct, when such

DEFENDANT'S MEMORANDUM REGARDING
SENTENCING GUIDELINE CALCULATIONS
(*Darryl Wright*; No. CR14-5539 BHS) - 17

BLACK LAW, PLLC
1111 Hoge Building, 705 Second Avenue
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401

conduct has not been admitted and our primary opposition is based on the reasoned arguments of an attorney highly familiar with the law surrounding disability benefits who reviewed all of the relevant materials and concluded that Mr. Wright was not rendered ineligible for the most significant benefits he received.

## IV.    CONCLUSION

Based on the foregoing, the Court should calculate Mr. Wright's advisory sentencing guideline range to be **8-14 months** (Offense Level 11, Criminal History Category I).

DATED this 18th day of August, 2016.

Respectfully submitted,

BLACK LAW, PLLC


s/ Christopher Black
Christopher Black
Attorney for Darryl Wright
Black Law, PLLC
1111 Hoge Building
705 Second Avenue
Seattle, WA  98104
Phone:        206.623.1604
Fax:            206.658.2401
Email:         chris@blacklawseattle.com

DEFENDANT'S MEMORANDUM REGARDING
SENTENCING GUIDELINE CALCULATIONS
(*Darryl Wright*; No. CR14-5539 BHS) - 18

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on the below-noted date, via the CM/ECF system, upon the parties required to be served in this action.

DATED this 18th day of August, 2016.

Respectfully submitted,

BLACK LAW, PLLC


s/ Christopher Black
Christopher Black
Attorney for Darryl Wright
Black Law, PLLC
1111 Hoge Building
705 Second Avenue
Seattle, WA  98104
Phone:        206.623.1604
Fax:            206.658.2401
Email:        chris@blacklawseattle.com

DEFENDANT'S MEMORANDUM REGARDING
SENTENCING GUIDELINE CALCULATIONS
(*Darryl Wright*; No. CR14-5539 BHS) - 19

BLACK LAW, PLLC
1111 Hoge Building, 705 Second Avenue
Seattle, WA  98104
206.623.1604 | Fax:  206.658.2401