The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DARRYL LEE WRIGHT,<br><br>Defendant. | NO. CR14-5539BHS<br><br>RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF BOND CONDITIONS REGARDING VISITS WITH MINOR DAUGHTER |

Comes now the United States, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and David Reese Jennings and Gregory A. Gruber, Assistant United States Attorneys for said District, and files this response to defendant Darryl Wright's Motion for Reconsideration of Bond Conditions.

**Issue**

Defendant Darryl Wright objects to the modification of his bond, which allows him to remain in the community pending the completion of his sentencing on his guilty pleas to two counts involving fraud against the United States, but temporarily restricts his contact with M.M., his minor daughter. The government sought the modification because it alleges -- based on information from three sources, one of whom is M.M. herself (who was interviewed, along with one of the other sources, in person by one of the undersigned

RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION - 1
OF BOND CONDITIONS MODIFICATION/
*U.S. v. DARRYL WRIGHT*, CR14-5539BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

and a victim-witness specialist) -- that defendant Wright was directly involved in creating and introducing into the sentencing evidence a letter signed by M.M. that does not contain her true thoughts.  A memorandum of that interview by USAO Victim-Witness Specialist Maggie Land, dated August 23, 2016 (and provided that day as discovery, before the original August 25th sentencing hearing), is attached as Exhibit 1 to the defense motion for reconsideration.

Defendant Darryl Wright complains that "the Court was presented with inaccurate information in conjunction with the motion, and that absent this inaccurate information, the modification is not warranted."  Motion at 1.  The United States disagrees with that conclusion, and further believes that any alleged "inaccuracies" are really just differing inferences drawn from the known facts, or simply a misunderstanding of certain details at the time the government's sentencing memorandum was filed on August 22, 2016.[1]  As requested by the Court, the United States responds here to clear the record on these points.

**Discussion**

The core issue of this motion, distinct from any hyperbole by either party, is whether Darryl Wright should have contact with an important potential witness at his sentencing prior to that hearing.  It just so happens that this potential witness is his 13-year old daughter.  It should not be forgotten that whatever time Darryl Wright is about to spend in prison and thus away from his daughter is nobody's fault but his own.  In addition, it has been seven months since defendant entered his guilty plea, and 18 months since his indictment.  Darryl Wright has been on bond and had been allowed contact with M.M. that whole time (except the last three weeks).

---

[1] The AUSA who participated in the August 11th interview of M.M. was on leave and unavailable for final editing of the government's sentencing memorandum prior to filing.  Unfortunately, this may have allowed some confusion about certain details to linger with co-counsel, who was not present for M.M.'s interview and did not have the benefit of the still-unwritten internal memo by Ms. Land.  The key facts, however -- that M.M.'s first letter stated that she wanted her Dad to go to prison, and that the second letter typed by Darryl Wright said the opposite (apart from her real wishes) -- are fully consistent between both memorandums.

RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION - 2
OF BOND CONDITIONS MODIFICATION/
*U.S. v. DARRYL WRIGHT*, CR14-5539BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Rather than it being an arbitrary decision meant merely to harass the defendant, the 'no contact' motion was made to ensure justice being done in this case. First, the United States sought no contact because of witness tampering, not because of the challenged comment about defendant having tried to have his daughter arrested. That bare assertion was not backed up on the record with any facts at the time, and indeed was immediately and vociferously denied by defense counsel. (It was, nonetheless, a fair comment based on the police reports, which show defendant vigorously trying to have M.M.'s mother arrested for the recorded call between M.M. and defendant.) Presumably the Court based its decision solely on the initial argument about the reasons for the government's request, namely how M.M. was a potential witness at the continuing hearing, and that her testimony might still be necessary to resolve the outstanding issue raised by M.M.'s letter submitted by the defense. At the time, the remainder of the hearing was expected to occur quickly, but nothing about that issue besides scheduling has truly changed since August 25th.

**Argument**

It is unfortunate that we are even talking about M.M. being a witness at her father's sentencing. But M.M. is a potential witness only because the defense knowingly made her one. Well before they filed their sentencing memorandum, defense counsel was warned that the government had learned of shenanigans regarding a letter to the Court, supposedly written by M.M., which failed to accurately state her thoughts. Despite this admonition, the defense filed the letter anyway, thus bringing everything contained in that letter -- and all its accompanying circumstances -- before the Court. As we told M.M. during her August 11th interview, we would try to avoid calling her as a witness, and fervently hoped that the defense would not use the letter that Darryl Wright and his romantic partner, Heather Munden, knew did not state M.M.'s true feelings.

But here we go again, right back into the vendettas and domestic disputes of defendant Darryl L. Wright. Once again, defendant Darryl Wright asks us to trust his version of events, over and above evidence to the contrary. The defense argues that since

RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION - 3
OF BOND CONDITIONS MODIFICATION/
*U.S. v. DARRYL WRIGHT*, CR14-5539BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Darryl Wright said it, it therefore must be true. If it happens to be false or a lie, however, then that's not his fault, because he simply doesn't know any better. This canard must come to an end.

The reports and testimony of Dr. Burch hit the nail on the head, and explain so much of what has occurred in this case (and in defendant Wright's life generally). In summary, Darryl Wright is a selfish and narcissistic malingerer, and nothing that comes out of his mouth should be assumed to be true unless it also happens to benefit to him. If the truth would be detrimental, then Darryl Wright lies, or he falsely claims he doesn't remember, or he blames someone else. The same is holding true here. In his declaration, attached as Exhibit 2 to the defense motion for reconsideration, Darryl Wright says, "I am aware that MWM has a different recollection."[2]

This Court saw M.M. testify during the Karen Wright trial. M.M. is a fairly quiet, very smart, earnest, and honest young person. But she is also still a child, and thus subject to being scared of a parent. "Scared" does not have to mean frightened of physical harm. In fact, at no time has government counsel ever alleged, or even suggested, that Darryl Wright would *physically* hurt M.M. (though his history makes it difficult to rule out such concern). In short, the government is concerned that if given the chance, Darryl Wright will pressure M.M. to back his version of events. After all, if the Court were to believe M.M.'s version (as reflected in Ms. Land's memo of the interview), that could cause the defendant major damage at sentencing.

This "threat" of emotional pressure on M.M. to do what would benefit her father and thus please him makes the substance of the recorded phone call that underlies the "tried to have her arrested" comment all the more interesting. During the call, Darryl Wright, a liar and self-admitted fraudster, lectures M.M. on the importance of following through on her word (she had apparently failed to call him when she had said she would).

---

[2] We note that the defendant had the benefit of Ms. Land's August 23rd memo as he wrote his declaration on August 24th.

RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION - 4
OF BOND CONDITIONS MODIFICATION/
*U.S. v. DARRYL WRIGHT*, CR14-5539BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Looking past that irony, we get a peek at the real Darryl Wright, as already shown to us by Dr. Burch.

Darryl Wright's reaction to learning of the recording -- immediately filing a police report -- is also highly illustrative. In his zeal to attack M.M.'s mother (with whom he was engaged in an acrimonious custody and support payments dispute), the defendant failed to consider that, by definition, he was dragging his daughter into a criminal investigation. *See* Attachment 'A' (police files regarding recorded call).

At the very least, she would obviously be a witness; at most, she was a potential defendant. Either way, harm to M.M. from Darryl Wright's attack on D.M. was unavoidable. There was simply no way for police or anyone else to be certain the call was not actually recorded by his daughter. This aspect supports the government's challenged August 25th interpretation of that chain of events. Sure, Darryl Wright told police that M.M. had denied involvement or knowledge in the recording of the call, but it is Darryl Wright doing that reporting. Certainly Darryl Wright, of all people, understands the concept of false denials when confronted by an authority figure. Ultimately, the defendant's concerted and highly focused efforts, and those of his lawyer, were for nothing. Not surprisingly, no criminal charges were pursued by any prosecutor in either Washington or Idaho.

Darryl Wright's desire to attack M.M.'s mother used M.M. and thus imperiled M.M. Their daughter became a pawn in Darryl Wright's ongoing battle with M.M.'s mom. The act speaks for itself; we need not engage in speculation about Darryl Wright's ability or willingness to emotionally pressure his daughter about a topic important to him. One only has to listen to the last five minutes of his recorded call with M.M. -- the very same call that led to the disputed statement by counsel in the heat of argument -- to see that. The police reports about the incident only reinforce that conclusion.

The obstruction issue at sentencing is whether M.M. should be permitted to use her own words at sentencing. She said, and wrote, that she thought her Dad should go to jail -- a fact which M.M. confirmed, in person, to the government. The defense could

RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION - 5
OF BOND CONDITIONS MODIFICATION/
*U.S. v. DARRYL WRIGHT*, CR14-5539BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

have heeded the United States' warning and simply withheld the letter.  Instead, they filed it.

The government is worried about additional obstruction attempts, and justifiably so.  The fact that we are sliding into a hearing involving Darryl Wright's checkered personal life is unfortunate and an inappropriate diversion from the remaining steps in this case.  We are now asked to determine if M.M. is lying or misremembering, and whether M.M.'s original letter was destroyed by Darryl Wright or Heather Munden (who herself has much to gain by her boyfriend and son's father avoiding or minimizing his prison time).  Darryl Wright asks the Court to consider his conduct as that of a doting father, who somehow failed to understand the significance of his actions.

Importantly, the government's request for the no contact order was and is about protecting the judicial process from a man who has yet to show any respect for it.  It is also about protecting a vulnerable, juvenile witness from a man who has shown no hesitation to bully her (*see* phone call recording) and other witnesses against him.  Those other witnesses (*e.g.*, CJ Jackson) included adults with professional careers, college educations, and far more life experience than M.M. has at age 13.  Indeed, Darryl Wright has previously been called to task for speaking to witnesses in this case (both locally and in Idaho) after being specifically instructed to have no contact with them.  His response when caught?  Basically, "I didn't understand that 'no contact' really meant 'no contact.'"  And yet, everyone is just supposed to believe Darryl Wright when he says he's learned his lesson, and it won't happen again.

**Conclusion**

Sentencing is upon us, as is the time for punishment.  The defendant knows that he will be separated from his daughter.  He himself is asking to be sent to prison.  The only question is whether Darryl Wright's separation from M.M. should start now or a few weeks from now.  The government believes this Court made the right decision at the August 25th hearing, and did so for the right reasons.  We respectfully urge the Court to so affirm by standing by that decision and denying the defendant's motion for

RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION - 6
OF BOND CONDITIONS MODIFICATION/
*U.S. v. DARRYL WRIGHT*, CR14-5539BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

reconsideration. There has been no showing by the defense of any intentional misstatement by the government. More importantly, it appears that that the Court did not actually give the statement at issue any weight whatsoever. No other facts have been presented that adequately support a change to the modification limiting visitation imposed at the last hearing. M.M. is still a potential witness for sentencing, and an important one at that.

      THEREFORE, the United States respectfully requests that the defense motion for reconsideration be DENIED, and that the "no contact" order remain in place.

      DATED this 14th day of September, 2016.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

*s/Gregory A. Gruber*
GREGORY A. GRUBER
DAVID REESE JENNINGS
Assistant United States Attorneys
United States Attorney's Office
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
Telephone: (253) 428-3800
Facsimile: (253) 428-3826
E-mail: Gregory.A.Gruber@usdoj.gov

RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION - 7
OF BOND CONDITIONS MODIFICATION/
*U.S. v. DARRYL WRIGHT*, CR14-5539BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

*s/Jennifer Shauberger*
JENNIFER SHAUBERGER
Legal Assistant
United States Attorney's Office
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
Phone: 253-428-3800
FAX: 253-428-3826

RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION - 8
OF BOND CONDITIONS MODIFICATION/
*U.S. v. DARRYL WRIGHT*, CR14-5539BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800