# ATTACHMENT A

## Lake Forest Park Police Department

**DATE:** 11/03/15

**TO:** Snoqualmie Municipal Court Prosecutor Lynn Moberly

**FROM:** Detective Tony Matthews

**RE:** LFP Case #2015-9586 68

---

Here is the case we discussed last week. I understand that you will be forwarding this case to another prosecutor due to conflict. Please let me know whom you forward the case to and their contact information. Also, if you can let that prosecutor know that I would like contact from them upon their decision as to whether or not a charge might be filed.

Thank you.

Tony Matthews
Detective



18 December 2015

Detective Tony Matthews
Investigations Unit
Lake Forest Police Department
17425 Ballinger Way NE
Lake Forest Park, WA 98155

RE: Case number 2015-00009568

Dear Detective Matthews,

At the request of Lynn Moberly, City of Snoqualmie, WA prosecutor, I reviewed your investigation detailed in the case referenced above. After giving the matter careful consideration I am declining to file a violation of RCW 9.73.030 for the following reasons:

1. The recording of the telephone conversation was allegedly made by the minor child's mother Darla McDaniel at a location within the state of Idaho. Under Idaho Statutes Chapter 67 recordings of oral or electronic communications can be made with the consent of one party to the communication. Assuming Ms. McDaniel made the recording only her consent was required.

2. Under RCW 9.73.030 a recording of a telephone conversation whether it occurs within or without the state may not be made without the permission of all parties to the conversation.

3. Complainant Darryl Wright indicated that the telephone conversation at issue took place on his part in his home in Snoqualmie, King County, WA and was recorded without his knowledge or consent. If this is true the recording was made in violation of RCW 9.73.030. However, Ms. McDaniel's recording of the conversation (if in fact she made it) is somewhat vitiated from an equitable standpoint given the one party consent aspect of Idaho law.

4. The District Court of King County has jurisdiction to adjudicate a case alleging a violation of RCW 9.73.030 only if the defendant in such a case is physically within the territorial limits of King County, WA.

5. The suspect in this case, Darla McDaniel, resides in the state of Idaho and is not present in King County, WA. The District Court is without authority to compel her to appear before the court in King County, WA.

6. Given the lack of personal jurisdiction over Ms. McDaniel it is not feasible to proceed with prosecution for violation of RCW 9.73.030.

7. Your report indicates that Mr. Wright and Ms. McDaniel are engaged in a legal custody dispute involving their minor child who was a party to the recorded conversation. RCW 9.73.060 provides Mr. Wright with a civil cause of action for damages for violation of RCW9.73.030 which he may wish to pursue in connection with his custody dispute or in a separate cause of action.

Thank you for your work on this case.  Please contact me if you have questions or comments.

Sincerely,

*R. L. Mitchell*

R. L. Mitchell
Redmond Prosecuting Attorney

COPY

**Tony Matthews**

| | |
|---|---|
| **From:** | Lynn Moberly <lmoberly@isomedia.com> |
| **Sent:** | Friday, November 20, 2015 12:35 PM |
| **To:** | Tony Matthews |
| **Cc:** | Larry Mitchell |
| **Subject:** | Re: Darryl Wright case. |

*425-556-2119*

I forwarded it to Larry Mitchell. He is the City of Redmond prosecutor. I will cc him here, so that you can contact him. I asked him to contact you once he makes a filing decision.
Thanks.
LYNN

On 11/20/2015 11:32 AM, Tony Matthews wrote:

> The "victim" is asking for an update. Has the case been forwarded to another prosecutor and if so, what is their name and phone number? Here is the email I just received from him.
>
>
> "Detective Matthews,
>
> Attached is a brief video of my phone while my daughter's phone is being dialed. As you can hear, Darla still has a block on all my calls to my daughter's iPhone. So, the only way I can talk with my daughter is on Darla's phone, where she continues to record our phone conversations without my consent.
>
> My daughter is with me in Snoqualmie this weekend, and she will be with me for a week starting Nov 20. She is available for an investigative interview anytime on those days.
>
> Can you please let me know the contact information for the prosecutor, so I can receive an update on this case? Also, can you please forward this email to her?
>
> Thank you,
> Darryl Wright"
>
> Thank you in advance.
>
>
> Detective Tony Matthews
> Investigations Unit
> Lake Forest Park Police Department
> 17425 Ballinger Way NE
> Lake Forest Park, WA 98155
> (206) 364-8216 x532
> Web: www.cityoflfp.com
>
> See potential suspect photos at
> http://canyouid.me/
>
> See CanYouID.me on Facebook at
> https://www.facebook.com/Canyouidme



1

*WARNING - FOR POLICE USE ONLY - NOT FOR PUBLIC DISTRIBUTION*

*This electronic message contains information which is privileged and confidential. The information, and all file attachments, is intended solely for the exclusive use by the named individuals or entity. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this message in error, please notify me immediately by the listed telephone number (or by e-mail). Not for Discovery – The entire contents of this electronic message is only a work product*

**This record is exempt from disclosure under RCW Section 42.56.420 of the Public Disclosure Act. This record contains proprietary information that has been prepared, assembled or is maintained to prevent, mitigate or respond to criminal acts or to protect against threats to public safety. Public disclosure of this record would have a substantial likelihood of threatening public safety.**

```
--
Lynn Moberly
Attorney at Law
```



# Lake Forest Park Police Department
## Detail

**Print Date/Time:** 11/03/2015 10:57

**Login ID:** matthewst

**Case Number:** 2015-00009568

Lake Forest Park Police Department

**ORI Number:** WA0172600

## Case Details:

| | | | | | | |
|---|---|---|---|---|---|---|
| Case Number: | 2015-00009568 | | Incident Type: | Assist Outside Agency | | |
| Location: | 17425 BALLINGER WAY NE | | Occured From: | 09/20/2015 12:00 | | |
| | Lake Forest Park, WA 98155 | | Occured Thru: | 09/30/2015 12:00 | | |
| | | | Reported Date: | 10/12/2015 15:03 Monday | | |
| Reporting Officer ID: | 5056-Matthews | Status: | Active | Status Date: | 10/12/2015 | |
| | | Disposition: | Referred to Investigations | Disposition Date: | 10/22/2015 | |
| Assigned Bureau: | Detectives | | | | | |

### Case Assignments:

| Assigned Officer | Assignment Date/Time | Assignment Type | Assigned By Officer | Due Date/Time |
|---|---|---|---|---|
| 5056-Matthews | 10/22/2015 00:00 | Lead Investigator | 7888-Harden | |

| Associated Cases | Status | Assisting ORIs | Role |
|---|---|---|---|
| | | | |

| Modus Operandi | | Solvability Factors | Weight |
|---|---|---|---|
| | | | Total: |

## Offenses

| No. | Group/ORI | Crime Code | Statute | Description | Counts |
|---|---|---|---|---|---|
| 1 | State | 90Z | 9.73.030 | Intercepting, Recording or Divulging Private Communication | 1 |

# Lake Forest Park Police Department
## Detail

| | | |
|---|---|---|
| **Print Date/Time:** | 11/03/2015 10:57 | Lake Forest Park Police Department |
| **Login ID:** | matthewst | **ORI Number:** WA0172600 |
| **Case Number:** | 2015-00009568 | |

### Offense #    1

| | | | |
|---|---|---|---|
| **Group/ORI:** State | **Crime Code:** 90Z | **Statute:** 9.73.030 | **Counts:** 1 | **Attempt/ Commit Code:** Commit |
| **Description:** | Intercepting, Recording or Divulging Private Communication | | **Offense Date:** 09/30/2015 |

| | | |
|---|---|---|
| **NCIC Code:** 090Z | **Scene Code:** Residence/Home | **Bias/Motivation:** _Unknown |
| Offense Status: | Status Date: | Occupancy Code: |
| Arson Code: | **Domestic Code:** No | **Child Abuse:** No |
| **Gang Related:** No | Aiding/Abetting | Sub-Code: |
| # of Adults: | # of Juveniles: | **IBR Seq. No:** 1 |
| Property Damage Amt.: | Abandoned Structure: | Household Status: |
| Domestic Circumstance: | Carjacking: | |
| Accosting Situation: | Hate Bias Indicator: | Premise Code: |
| Gambling Motivated: | Order of Protection: | Prior Inv - Victim: |
| Prior Inv - Offender: | Anti-reproductive rights crime: | Cargo Theft: |
| Special Circumstances: | Precipitating Event: | |

| Offender Suspected of Using | Victim Suspected of Using | |
|---|---|---|
| Alcohol: | Alcohol: | |
| Drugs: | Drugs: | |
| Computer: | Computer: | |
| Aggravated Assault/ Homicide Circumstances #1: | Aggravated Assault/ Homicide Circumstances #2: | |
| Aggravated Assault/ Homicide Remarks #1: | Aggravated Assault/ Homicide Remarks #2: | |
| Justifiable Homicide Circumstances : | Justifiable Homicide Code : | Larceny Type: |
| Method of Entry Type: | Method of Entry : | |
| Point of Entry: | # of Premises Entered : | |
| Method of Exit Type: | Method of Exit : | |
| Point of Exit: | How Left Scene: | |
| Direction of Travel: | | |
| Counterfeit Type: | Counterfeit Status: | Counterfeit Amount: |

## Subjects

| Type | No. | Name | Address | Phone | Race | Sex | DOB/Age |
|---|---|---|---|---|---|---|---|
| Subject | 1 | McDaniel, Darla Sue | Boise, ID 83717 | (208 | White | Female | 53 |
| Victim | 1 | Wright, Darryl | Snoqualmie, WA 98065 | (208) | | Male | |
| Witness | 1 | Black, Chris | 1111 HOGE BUILDING-705 SECOND AVE Seattle, WA 98104 | (206)623-1604 | | Male | |

# Lake Forest Park Police Department
## Detail

**Subject #** __1-Subject__

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Primary:** | Yes | | | | | | |
| **Name:** | McDaniel, Darla Sue | **Race:** | White | **Sex:** | Female | **DOB:** | |
| **Address:** | | Height: | | Weight: | | Build: | |
| | Boise ID 83717 | Eyes: | | Hair: | | **Age:** | 53 |
| **Primary Phone:** | (208) | SSN: | | DVL #: | | **State:** | |
| Resident Type: | | Resident Status: | | | | Statement Type: | |
| Disposition: | | Date: | | | | Custody Status: | |

__Related Offenses__

| Group/ORI | Crime Code | Statute | Description |
|---|---|---|---|
| State | 90Z | 9.73.030 | Intercepting, Recording or Divulging Private Communication |

Related Weapons

Victim/Offender Relationship

| | | |
|---|---|---|
| Transported By: | Extent of Injury: | Hospital: |
| Domestic Violence: | Domestic Violence Referrals: | Federal Agencies Involved: |
| Condition: | Medical Treatment | |

Missing Person Information

**Subject #** __1-Victim__

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Primary:** | No | | | | | | |
| **Name:** | Wright, Darryl | Race: | | **Sex:** | Male | | |
| **Address:** | | Height: | | Weight: | | Build: | |
| | Snoqualmie WA 98065 | Eyes: | | Hair: | | Age: | |
| **Primary Phone:** | (208) | SSN: | | DVL #: | | **State:** | |
| Resident Type: | | Resident Status: | | | | Statement Type: | |
| Disposition: | | Date: | | | | Custody Status: | |

__Related Offenses__

| Group/ORI | Crime Code | Statute | Description |
|---|---|---|---|
| State | 90Z | 9.73.030 | Intercepting, Recording or Divulging Private Communication |

Related Weapons

Victim/Offender Relationship

| | | |
|---|---|---|
| Transported By: | Extent of Injury: | Hospital: |
| Domestic Violence: | Domestic Violence Referrals: | Federal Agencies Involved: |
| Condition: | Medical Treatment | |

Missing Person Information

# Lake Forest Park Police Department
## Detail

Lake Forest Park Police Department
ORI Number: WA0172600

### Subject #    1-Witness

Primary: No
Name: Black, Chris                                          Race:                    Sex:    Male
Address: 1111 HOGE BUILDING-705        Height:              Weight:                  Build:
         SECOND AVE
         Seattle WA 98104               Eyes:                Hair:                    Age:
Primary Phone: (206)623-1604           SSN:                 DVL #:                   State:
Resident Type:                         Resident Status:                    Statement Type:    Written
Disposition:                           Date:                               Custody Status:

#### Related Offenses

| Group/ORI | Crime Code | Statute | Description |
|---|---|---|---|
| State | 90Z | 9.73.030 | Intercepting, Recording or Divulging Private Communication |

Related Weapons

Victim/Offender Relationship

Transported By:                        Extent of Injury:                    Hospital:
Domestic Violence:                     Domestic Violence Referrals:         Federal Agencies Involved:
Condition:                             Medical Treatment:

Missing Person Information

## Arrests

| Arrest No. | Name | Address | Date/Time | Type | Age |
|---|---|---|---|---|---|

## Property

| Date | Code | Type | Make | Model | Description | Tag No. | Item No. |
|---|---|---|---|---|---|---|---|

## Vehicles

| No. | Role | Vehicle Type | Year | Make | Model | Color | License Plate | State |
|---|---|---|---|---|---|---|---|---|



Lake Forest Park Police Department
# Detective Investigation Report

**CASE:** #2015-9586 – Assist to Snoqualmie Police Department
**DATE:** 10/17/15
**OFFICER:** DETECTIVE TONY MATTHEWS #5056

**NARRATIVE:**

10-17-15

1130 hrs.        On 10/01/15 at approximately 1617 hours, I received an email from Captain Nick Almquist from the Snoqualmie Police department. He also left me a voice mail addressing this case so I called Captain Almquist. He explained to me that a Darryl Wright had sent him an email detailing a conversation that he had with his daughter that had been recorded without his consent. Captain Almquist explained that Mr. Wright's significant other was one of Snoqualmie's city councilpersons and inquired if I could conduct the investigation so that there would be no questions that this would be an unbiased investigation. I told Captain Almquist that he would have to contact my Chief of Police, Steve Sutton and get his approval. Captain Almquist stated he would do that.

10-12-15        I was assigned by Lake Forest Park Police Chief Sutton to assist the Snoqualmie Police Department and conduct this investigation. I pulled up Washington State RCW 9.73.030 titles "Intercepting, recording, or divulging private communication – Consent required – Exceptions" and printed it out and placed it with the case file. I pulled up Idaho state statute Title 18 Chapter 67 concerning Communications Security and printed it out and placed it with the case file.

10-17-15

1150 hrs.        I called victim Darryl Wright at his listed phone number and left a message requesting he contact me at the PD to review his case. I printed out the original email from Captain Almquist and placed it with the case file. There were three attachments. Two attachments were one page each and appear to be screen shots from the cell phone (208) ▮▮▮▮▮▮ This appears to be the phone number listed for subject Darla McDaniel. I printed the screen shots and placed them with the case file. The last attachment was titled 20SEP2015.m4a and appears to be a recording between Darryl Wright and a young female. I listened to the recording. I then burned two copies onto CD's and placed both copies with the case file. One was marked "Original" and the other "Copy".

I then reviewed the email from Capt. Almquist. The second and third pages of the email are a communication to Captain Almquist from V-Darryl Wright. Mr. Wright's email was as follow:

"Capt. Almquist,

My King County family law attorney, Terry Zundel, recomme3nded I file a criminal complaint with my local law enforcement, and my significant other, Heather (copied), recommended I contact you specifically.



Lake Forest Park Police Department
# Detective Investigation Report

**CASE:** #2015-9586 – Assist to Snoqualmie Police Department
**DATE:** 10/17/15
**OFFICER:** DETECTIVE TONY MATTHEWS #5056

This situation may be unique for your officers to investigate, but since I was a victim when the alleged crime took place, while I was in my Snoqualmie home at ▨▨▨▨ I feel it is most appropriate for me to reach out to the Snoqualmie Police Department.

In addition to the son Heather and I raise together in Snoqualmie, we also have a 12 year-old daughter ▨▨▨▨ that I have from a previous relationship from when I lived in Boise, Idaho. I have joint legal custody of ▨▨▨▨ along with her mom, Darla McDaniel. This shared custody involves ▨▨▨▨ traveling to Snoqualmie frequently, as well as me spending one week each month with ▨▨▨▨ in Boise during the school year. During other periods, ▨▨▨▨ lives with her mom in Boise, and ▨▨▨▨ is a 7th grader at Les Bois Junior High School in Boise.

## SURROUNDING FACTS

The custodial case re: ▨▨▨▨ has been heavily litigated since my return from Iraq in Late-2005. Under the current parenting plan ▨▨▨▨ is to call me from Boise during the evenings on Wednesday's and Sundays throughout the year. Washington's applicable RCW requires two-party consent when recording telephone conversations. Conversely, Idaho is a one-party consent state. As you are aware, earlier this year I received a federal indictment for allegations of fraud. I pleaded "not guilty" and am scheduled for a federal trial, starting March 29, 2016. Earlier this summer the custodial parenting plan with ▨▨▨▨ was modified in King County and the venue was transferred to Ada County, Idaho (Boise). Currently, residual child support court actions are taking place in Ada County and are scheduled to conclude in 2016.

## CRIMINAL SITUATION

On Sunday, September 20, 2015, ▨▨▨▨ and I talked on the phone during our regularly scheduled time, while Heather and I were in our residence in Snoqualmie and ▨▨▨▨ was at her mother's home in Boise. (I do not know for certain ▨▨▨▨ was at Darla's home, but that is where ▨▨▨▨ told me where she was, and I have no reason to not believe her.) I attached the screen shots of the phone calls between me and ▨▨▨▨ which were taken on my cell phone (208-▨▨▨▨ and Darla's cell phone (208-▨▨▨▨.

Recently my federal criminal attorney, Chris Black, received discovery from AUSA David R. Jennings, which surprisingly included an audio recording of my Sunday, September 20, 2015 telephone conversation between me and ▨▨▨▨ He confirmed with the AUSA that the federal government did not have a court order to recorded this conversation or a warrant, and that Mr. Jennings "said that Darla provided them the recording. The government had no advance involvement or notice." I never consented to this conversation being recorded. I am with my daughter right now in Boise, and she confirms to me that she did not record our telephone conversation, she does not know how to record



**CASE:**      **#2015-9586 – Assist to Snoqualmie Police Department**
**DATE:**      **10/17/15**
**OFFICER:**   **DETECTIVE TONY MATTHEWS #5056**

our telephone conversations, and does not know who could have recorded our telephone conversation. My concern is Darla is illegally recorded my telephone conversations with my daughter, and she will use these illegal recordings, just as she supplied them to the feds, during our current custody proceedings in Ada County, Idaho, where one-party consent is all that is needed to enter a recording as evidence in Idaho.

I realize the Snoqualmie Police Department does not have any detectives on staff, but I respectfully request that your department allocate the attention my situation deserves, so I do not continue to be victimized. If your department does not have3 the resources, then I request your forward my criminal complaint to Issaquah, where you have a business relationship and which their police department does have police detectives on staff.

My King County family law attorney confirmed with me earlier this week that it is her opinion if Darla recorded my conversation with _____ this action is illegal, as the RCW has an interstate communication recording clause. Most importantly I want Darla to cease all illegal activities regarding my phone conversations with my daughter, and I know legal intervention in WA is the most effective course of action. I definitely do not want her to have an illegal disadvantage as the custody process in Idaho processes.

_____ and I will be in Snoqualmie this Thursday evening (through Sunday, October 4th). I talked with her, and she is comfortable (as am I) being interviewed by police regarding this matter. I will make her available for such an interview.

Please do not hesitate to call me with an question. Any help you can provide is greatly appreciated.

Thank you.
Darryl Wright
208_____

I reviewed Washington State RCW 9.73.030 – **Intercepting, recording, or divulging private communication – Consent required – Exceptions**.

(1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:



# Lake Forest Park Police Department
# Detective Investigation Report

*CASE:*     **#2015-9586 – Assist to Snoqualmie Police Department**
*DATE:*     **10/17/15**
*OFFICER:*     **DETECTIVE TONY MATTHEWS #5056**

(a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designated to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;

(b) Private conversation, by any device electronic or otherwise designated to record or transmit such conversation regardless how the devise is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

(2) Notwithstanding subsection (1) of this section, wire communications or conversations (a) of an emergency nature, such as the reporting of a fire, medical emergency, crime, or disaster, or (b) which convey threats of extortion, blackmail, bodily harm, or other unlawful requests or demands, or (c) which occur anonymously or repeatedly or at an extremely inconvenient hour, or (d) which relate to communications by a hostage holder or barricaded person as defined in RCW 70.85.100, whether or not conversation ensues, may be recorded with the consent of one party to the conversation.

(3) Where consent by all parties is needed pursuant to this chapter, consent shall be considered obtained whenever one party has announced to all other parties engaged in the communication or conversation, in any reasonably effective manner, that such communication or conversation is about to be recorded or transmitted: PROVIDED, That if the conversation is to be recorded that said announcement shall also be recorded.

(4) An employee of any regularly published newspaper, magazine, wire service, radio station, or television station acting in the course of bona fide news gathering duties on a full-time or contractual or part-time basis, shall be deemed to have consent to record and divulge communications or conversations otherwise prohibited by this chapter if the consent is expressly given or if the recording or transmitting device is readily apparent or obvious to the speakers. Withdrawal of the consent after the communication has been made shall not prohibit any such employee of a newspaper, magazine, wire service, or radio or television station from divulging the communications or conversation.

1428 hrs.     I called victim Darryl Wright at his listed phone number and left a message requesting he contact me at the PD to review his case. Wright returned my phone call and I obtained additional information for this case.



Lake Forest Park Police Department
# Detective Investigation Report

**CASE:**      #2015-9586 – Assist to Snoqualmie Police Department
**DATE:**      10/17/15
**OFFICER:**   DETECTIVE TONY MATTHEWS #5056
10-26-15

1530 hrs.      I called King County DPA Charles Sherer and discussed this case with him. After reviewing the RCW, Sherer believes the recording was illegal. Sherer stated that his court would not have jurisdiction over the case because violation of this RCW is a Gross Misdemeanor.

1555 hrs.      I called Snoqualmie Captain Almquist and left a message providing an update with this investigation.

1600 hrs.      I reviewed the email again from V-Darryl Wright and noted that his attorney, Chris Black received discovery from AUSA David Jennings that included the recording of a phone conversation he had with his daughter on 09/20/15 and that Darryl did not give permission for anyone to conduct the recording. In his email, V-Wright states that Chris Black told him that (AUSA) David Jennings said that Darla, his ex, provided them the recording.

1605 hrs.      I called subject Darla McDaniel at 208-███████ to inquire if she made the recording that was submitted to AUSA David Jennings. I received a phone messaging system and left a message requesting she contact me at the PD.

1610 hrs.      I called Lynn Moberly, the prosecutor for the City of Snoqualmie at 425-837-3173 and left a message requesting she contact me at the PD about this case.

1620 hrs.      Subject Darla McDaniel returned my phone call and I explained that a complaint had been forwarded to the Snoqualmie Police Department about a violation of this state's two-party consent for recordings. I explained that because her ex's significant other is a city councilperson in Snoqualmie, the Snoqualmie Police Department contacted my Chief and requested that I conduct the investigation. McDaniel told me that she lives in a one-party consent state and I told her that I consulted with a prosecutor here and that if someone calling from a one-party consent state records a person here in Washington State without their permission, it is a violation of the RCW in this state and is a Gross Misdemeanor. Darla told me that she has an attorney and thought she should speak to them before talking to me. I asked her to let me know her decision and our conversation ended.

1630 hrs.      I called Darryl Wright and left a message requesting he contact me at the PD and provide me with his attorney's phone number (Chris Black).

2343 hrs.      V-Wright left me a message stating that the phone number for his attorney, Chris Black was 206-███████.

10-27-15



Lake Forest Park Police Department
# Detective Investigation Report

| | |
|---|---|
| *CASE:* | *#2015-9586 – Assist to Snoqualmie Police Department* |
| *DATE:* | *10/17/15* |
| *OFFICER:* | *DETECTIVE TONY MATTHEWS #5056* |
| 1050 hrs. | I called Chris Black's office and left my phone number with the receptionist. |

1035 hrs.    I received a message from Chris Black. I called his office and briefly spoke with him about this case. At my request, Mr. Black will send an email detailing his conversation with AUSA David Jennings pertaining to who provided him with the recording that V-Wright forwarded to me.

10-28-15
0957 hrs.    I received an email from Chris Black, the attorney for Darry Wright. His email was as follows:

"Good morning Detective Matthews,

I am writing to follow up on our conversation of yesterday afternoon, to provide you with the statement you requested.

I am an attorney and I represent Darry Wright in a federal criminal proceeding. On September 23, 2015 I received discovery from the United States Attorney's Office for the Western District of Washington which included a recording of a call between Mr. Wright and his daughter. On September 29, 2015 I spoke to Assistant United States Attorney David Jennings about the recording. Mr. Jennings told me that the government had received the recording from Darla McDaniel. He further indicated that Ms. McDaniel provided the recording completely of her own volition, and that the government had not requested that she make any such recording or been involved in any manner with creating the recording. I cannot recall if Mr. Jennings specifically told me the person whom Ms. McDaniel gave the recording, and from whom Mr. Jennings received it, but I am virtually certain that it was Special Agent Joe Rogers with the Social Security Administration. This belief is based on the fact that I was also provided copies of numerous emails between Ms. McDaniel and SA Rogers, from which it appeared that SA Rogers was her contact point within the federal government.

Assistant United States Attorney David Jennings, Special Agent Joe Rogers, and Mr. Wright are cc'ed on this email.

Please do not hesitate to contact me if you have any further questions or if there is any further information I can provide.

Chris Black"

I placed the email with the case file. I have not heard a response from subject Darla McDaniel since she stated she was going to speak with her attorney. I am forwarding this case to the City of Snoqualmie



Lake Forest Park Police Department
## Detective Investigation Report

**CASE:**       *#2015-9586 – Assist to Snoqualmie Police Department*
**DATE:**       *10/17/15*
**OFFICER:**   *DETECTIVE TONY MATTHEWS #5056*

Municipal Court Prosecutor Lynn Moberly for review. It is my understanding that she will be forwarding this case to another local prosecutor for review due to a conflict. I recommend this case be reviewed to determine if charges should be filed in this case.



## Lake Forest Park Police Department
# Detective Investigation Report

**CASE:** **#2015-9568**
**DATE:** **11/20/15**
**OFFICER:** **DETECTIVE TONY MATTHEWS #5056**

**NARRATIVE:**

11-13-15

2319 hrs.       I received the following email from V-Wright:

"Hello,

Just checking in to see who is a good contact to receive an update from.

Thanks again.

On Fri, Nov 13, 2015 at 11:29 PM, Darryl★Wright <dwright.usa@gmail.com> wrote:

Detective Matthews,

Attached is a brief video of my phone while my daughter's phone is being dialed. As you can hear, Darla still has a block on all my calls to my daughter's iPhone. So, the only way I can talk with my daughter is on Darla's phone, where she continues to record our phone conversations without my consent.

My daughter is with me in Snoqualmie this weekend, and she will be with me for a week starting Nov 20. She is available for an investigative interview anytime on those days.

Can you please let me know the contact information for the prosecutor, so I can receive an update on this case? Also, can you please forward this email to her?

Thank you,
Darryl Wright"

Attached was a short video of his attempt to call his daughter on his cell phone and being informed that her phone had calling restrictions that would not allow completion of his call.

11-20-15

1130 hrs.       I responded to V-Wright via email that I would forward his email to the prosecutor.

1133 hrs.       I sent an email to Snoqualmie Municipal Court Prosecutor Lynn Moberly that I needed an update if the case had been forwarded to another prosecutor and if so, what their name and phone number were. I also included V-Wright's email content without the video.

1145 hrs.       I burned the video provided by V-Wright to a CD and placed with this follow-up until the reviewing prosecutor has been determined.

## RCW 9.73.030

## Intercepting, recording, or divulging private communication — Consent required — Exceptions.

(1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:

(a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;

(b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

(2) Notwithstanding subsection (1) of this section, wire communications or conversations (a) of an emergency nature, such as the reporting of a fire, medical emergency, crime, or disaster, or (b) which convey threats of extortion, blackmail, bodily harm, or other unlawful requests or demands, or (c) which occur anonymously or repeatedly or at an extremely inconvenient hour, or (d) which relate to communications by a hostage holder or barricaded person as defined in RCW 70.85.100, whether or not conversation ensues, may be recorded with the consent of one party to the conversation.

(3) Where consent by all parties is needed pursuant to this chapter, consent shall be considered obtained whenever one party has announced to all other parties engaged in the communication or conversation, in any reasonably effective manner, that such communication or conversation is about to be recorded or transmitted: PROVIDED, That if the conversation is to be recorded that said announcement shall also be recorded.

(4) An employee of any regularly published newspaper, magazine, wire service, radio station, or television station acting in the course of bona fide news gathering duties on a full-time or contractual or part-time basis, shall be deemed to have consent to record and divulge communications or conversations otherwise prohibited by this chapter if the consent is expressly given or if the recording or transmitting device is readily apparent or obvious to the speakers. Withdrawal of the consent after the communication has been made shall not prohibit any such employee of a newspaper, magazine, wire service, or radio or television station from divulging the communication or conversation.

[1986 c 38 § 1; 1985 c 260 § 2; 1977 ex.s. c 363 § 1; 1967 ex.s. c 93 § 1.]

Notes:

Reviser's note: This section was amended by 1985 c 260 § 2 and by 1986 c 38 § 1, each without reference to the other. Both amendments are incorporated in the publication of this

section under RCW 1.12.025(2). For rule of construction, see RCW 1.12.025(1).

**Severability -- 1967 ex.s. c 93:** "If any provision of this act, or its application to any person or circumstance is held invalid, the remainder of the act, or the application of the provision to other persons or circumstances is not affected." [1967 ex.s. c 93 § 7.]



**RCW 70.85.100**

## Authority to isolate telephones in barricade or hostage situation — Definitions.

(1) The supervising law enforcement official having jurisdiction in a geographical area who reasonably believes that a person is barricaded, or one or more persons are holding another person or persons hostage within that area may order a telephone company employee designated pursuant to RCW 70.85.110 to arrange to cut, reroute, or divert telephone lines for the purpose of preventing telephone communications between the barricaded person or hostage holder and any person other than a peace officer or a person authorized by the peace officer.

(2) As used in this section:

(a) A "hostage holder" is one who commits or attempts to commit any of the offenses described in RCW 9A.40.020, 9A.40.030, or 9A.40.040; and

(b) A "barricaded person" is one who establishes a perimeter around an area from which others are excluded and either:

(i) Is committing or is immediately fleeing from the commission of a violent felony; or

(ii) Is threatening or has immediately prior threatened a violent felony or suicide; or

(iii) Is creating or has created the likelihood of serious harm within the meaning of chapter 71.05 RCW relating to mental illness.

[1985 c 260 § 1; 1979 c 28 § 1.]





 **Idaho Statutes**

TITLE 18
CRIMES AND PUNISHMENTS

CHAPTER 67
COMMUNICATIONS SECURITY

18-6702.  INTERCEPTION AND DISCLOSURE OF WIRE, ELECTRONIC OR ORAL COMMUNICATIONS PROHIBITED. (1) Except as otherwise specifically provided in this chapter, any person shall be guilty of a felony and is punishable by imprisonment in the state prison for a term not to exceed five (5) years or by a fine not to exceed five thousand dollars ($5,000), or by both fine and imprisonment if that person:

(a)  Willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication; or

(b)  Willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when:

1.  Such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or

2.  Such device transmits communications by radio or interferes with the transmission of such communication; or

(c)  Willfully discloses, or endeavors to disclose, to any other person the contents of any wire, electronic or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication in violation of this subsection; or

(d)  Willfully uses, or endeavors to use, the contents of any wire, electronic or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication in violation of this subsection; or

(e)  Intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, intercepted by means authorized by subsection (2)(b), (c), (f) or (g) of this section or by section 18-6708, Idaho Code, if that person:

(i)  Knows or has reason to know that the information was obtained through the interception of such communication in connection with a criminal investigation; and

(ii)  Has obtained or received the information in connection with a criminal investigation with the intent to improperly obstruct, impede or interfere with a duly authorized criminal investigation.

(2)  (a) It is lawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service whose facilities are used in the transmission of a wire or electronic communication to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident

COPY

to the rendition of his service or to the protection of the rights or property of the provider of that service, except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

(b)   It is lawful under this chapter for an officer, employee, or agent of the federal communications commission, in the normal course of his employment and in discharge of the monitoring responsibilities exercised by the commission in the enforcement of 47 U.S.C. ch. 5, to intercept a wire, electronic or oral communication transmitted by radio or to disclose or use the information thereby obtained.

(c)   It is lawful under this chapter for a law enforcement officer or a person acting under the direction of a law enforcement officer to intercept a wire, electronic or oral communication when such person is a party to the communication or one (1) of the parties to the communication has given prior consent to such interception.

(d)   It is lawful under this chapter for a person to intercept a wire, electronic or oral communication when one (1) of the parties to the communication has given prior consent to such interception.

(e)   It is unlawful to intercept any communication for the purpose of committing any criminal act.

(f)   It is lawful under this chapter for an employee of a telephone company to intercept a wire communication for the sole purpose of tracing the origin of such communication when the interception is requested by an appropriate law enforcement agency or the recipient of the communication and the recipient alleges that the communication is obscene, harassing, or threatening in nature.

(g)   It is lawful under this chapter for an employee of a law enforcement agency, fire department or ambulance service, while acting in the scope of his employment, and while a party to the communication, to intercept and record incoming wire or electronic communications.

(h)   It shall not be unlawful under this chapter for any person:

(i)   To intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public;

(ii)   To intercept any radio communication that is transmitted:

(A)   By any station for the use of the general public, or that relates to ships, aircraft, vehicles or persons in distress;

(B)   By any governmental, law enforcement, civil defense, private land mobile or public safety communications system, including police and fire, readily accessible to the public;

(C)   By a station operating on an authorized frequency within the bands allocated to the amateur, citizens band or general mobile radio services; or

(D)   By any marine or aeronautical communication system;

(iii)   To engage in any conduct that:

(A)   Is prohibited by 47 U.S.C. section 553 (federal communications act of 1934); or

(B)   Is excepted from the application of 47 U.S.C. section 605 (federal communications act of 1934);

(iv)   To intercept any wire or electronic communication, the transmission of which is causing harmful interference to any lawfully operating station or consumer electronic equipment, to the extent it is necessary to identify the source of such interference; or

(v)   For other users of the same frequency to intercept any radio

communication, if such communication is not scrambled or encrypted, made through a system that utilizes frequencies monitored by individuals engaged in the provision or the use of such system.

(i)   It shall be lawful under this chapter for a provider of electronic communication service to record the fact that a wire or electronic communication was initiated or completed in order to protect such provider, another provider furnishing service toward the completion of the wire or electronic communication or a user of that service from the fraudulent, unlawful or abusive use of such service.

(3)   (a) Except as provided in subsection (3)(b) of this section, a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication other than to such person or entity or an agent thereof while in transmission on that service, to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient.

(b)   A person or entity providing electronic communication service to the public may divulge the contents of any such communication:

   (i)   As otherwise authorized in section 18-6707, Idaho Code, or subsection (2)(a) of this section;

   (ii)  With the lawful consent of the originator or any addressee or intended recipient of such communication;

   (iii) To a person employed or authorized, or whose facilities are used, to forward such communication to its destination; or

   (iv)  If such contents were inadvertently obtained by the service provider and appear to pertain to the commission of a crime, if such divulgence is made to a law enforcement agency.


History:

    [18-6702, added 1980, ch. 326, sec. 2, p. 834; am. 2002, ch. 223, sec. 2, p. 634; am. 2004, ch. 303, sec. 1, p. 849.]



Capt. Almquist,

My King County family law attorney, Terry Zundel, recommended I file a criminal complaint with my local law enforcement, and my significant other, Heather (copied), recommended I contact you specifically.

This situation may be unique for your officers to investigate, but since I was a victim when the alleged crime took place, while I was in my Snoqualmie home at ▮▮▮▮▮▮▮▮▮▮ I feel it is most appropriate for me to reach out to the Snoqualmie Police Department.

In addition to the son Heather and I raise together in Snoqualmie, we also have a 12-year old daughter, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ that I have from a previous relationship from when I lived in Boise, Idaho. I have joint legal custody of ▮▮▮▮▮▮ along with her mom, Darla McDaniel. This shared custody involves traveling to Snoqualmie frequently, as well as me spending one week each month with ▮▮▮▮▮ in Boise during the school year. During other periods, ▮▮▮▮▮ lives with her mom in Boise, and ▮▮▮▮▮ is a 7th grader at Les Bois Junior High School in Boise.

## SURROUNDING FACTS
The custodial case re: ▮▮▮▮▮ has been heavily litigated since my return from Iraq in late-2005. Under the current parenting plan ▮▮▮▮▮ is to call me from Boise during the evenings on Wednesdays and Sundays throughout the year. Washington's applicable RCW requires two-party consent when recording telephone conversations. Conversely, Idaho is a one-party consent state. As you are aware, earlier this year I received a federal indictment for allegations of fraud. I pleaded "not guilty" and am scheduled for a federal trial, starting March 29, 2016. Earlier this summer the custodial parenting plan with ▮▮▮▮▮ was modified in King County and the venue was transferred to Ada County, Idaho (Boise). Currently, residual child support court actions are taking place in Ada County and are scheduled to conclude in 2016.

## CRIMINAL SITUATION
On Sunday, September 20, 2015, ▮▮▮▮▮ and I talked on the phone during our regularly scheduled time, while Heather and I were in our residence in Snoqualmie and ▮▮▮▮▮ was at her mother's home in Boise. (I do not know for certain ▮▮▮▮▮ was at Darla's home, but that is where ▮▮▮▮▮ told me where she was, and I have no reason to not believe her.) I attached the screen shots of the phone calls between me and ▮▮▮▮▮, which were taken on my cell phone (208-▮▮▮▮▮) and Darla's cell phone (208-▮▮▮▮▮).

Recently my federal criminal attorney, Chris Black, received discovery from AUSA David R. Jennings, which surprisingly included an audio recording of my Sunday, September 20, 2015 telephone conversation between me and ▮▮▮▮▮ He confirmed with the AUSA that the federal government did not have a court order to recorded this conversation or a warrant, and that Mr. Jennings "said that Darla provided them the recording. The government had no advance involvement or notice." I never consented to this conversation being recorded. I am with my daughter right now in Boise, and she confirms to me that she did not record our telephone conversation, she does not know how to record our telephone conversation, and does not know who could have recorded our telephone conversation.

COPY

**My concern is Darla is illegally recorded my telephone conversations with my daughter, and she will use these illegal recordings**, just as she supplied them to the feds, during our current custody proceedings in Ada County, Idaho, where one-party consent is all that is needed to enter a recording as evidence in Idaho.

I realize the Snoqualmie Police Department does not have any detectives on staff, but I respectfully request that your department allocate the attention my situation deserves, so I do not continue to be victimized. If your department does not have the resources, then I request your forward my criminal complaint to Issaquah, where you have a business relationship and which thier police department does have police detectives on staff.

**My King County family law attorney confirmed with me earlier this week that it is her opinion if Darla recorded my conversation with Madison, this action is illegal**, as the RCW has an interstate communication recording clause. Most importantly I want Darla to cease all illegal activities regarding my phone conversations with my daughter, and I know legal intervention in WA is the most effective course of action. I definitely do not want her to have an illegal disadvantage as the custody process in Idaho processes.

▓▓▓▓▓▓ **and I will be in Snoqualmie this Thursday evening (through Sunday, October 4th). I talked with her, and she is comfortable (as am I) being interviewed by police regarding this matter. I will make her available for such an interview.**

Please do not hesitate to call me with an questions. Any help you can provide is greatly appreciated.

Thank you,
Darryl Wright
208-▓▓▓▓▓▓

---------- Forwarded message ----------
From: **Heather Munden** <heather.munden@gmail.com>
Date: Tue, Sep 29, 2015 at 8:33 PM
Subject: Re: Police Captain
To: Darryl★Wright <dwright.usa@gmail.com>

Captain Nick Almquist:

email: nalmquist@ci.snoqualmie.wa.us

phone number: 425.888.3333

On Tue, Sep 29, 2015 at 6:14 PM, Darryl★Wright <dwright.usa@gmail.com> wrote:

  Do you have Captain A's email address?





# DSM (5)
(208) ████

 View contact

**Email** 

📞 ➡️ Sep 20 (Sun) 18:42
00:00:39
Boise, ID

📞 ➡️ Sep 20 (Sun) 18:42
00:00:11
Boise, ID

📞 ➡️ Sep 20 (Sun) 18:41
00:00:10
Boise, ID

📞 ⬅️ Sep 20 (Sun) 18:33
00:07:16
Boise, ID

📞 ⬅️ Sep 20 (Sun) 18:28
00:04:00
Boise, ID

 



COPY



74° 🔲 📷 📶 ✅ 📷 ⏰ 4G📶📶 54% 🔋 23:10

← DSM (5)
(208) ▓▓▓▓▓

        View contact

(208) ▓▓▓▓         
MOBILE

Email        

📞 → **Sep 20 (Sun) 18:42**
00:00:39
Boise, ID

📞 → **Sep 20 (Sun) 18:42**
00:00:11
Boise, ID

📞 → **Sep 20 (Sun) 18:41**
00:00:10
Boise, ID

📞 ← **Sep 20 (Sun) 18:33**
00:07:16
Boise, ID

      

COPY

## Tony Matthews

**From:** dbl.aut@gmail.com on behalf of Darryl Wright <dwright.usa@gmail.com>
**Sent:** Friday, November 13, 2015 11:30 PM
**To:** Tony Matthews
**Subject:** Fwd: Video of call block
**Attachments:** IMG_0630.MOV

Detective Matthews,

Attached is a brief video of my phone while my daughter's phone is being dialed. As you can hear, Darla still has a block on all my calls to my daughter's iPhone. So, the only way I can talk with my daughter is on Darla's phone, where she continues to record our phone conversations without my consent.

My daughter is with me in Snoqualmie this weekend, and she will be with me for a week starting Nov 20. She is available for an investigative interview anytime on those days.

Can you please let me know the contact information for the prosecutor, so I can receive an update on this case? Also, can you please forward this email to her?

Thank you,
Darryl Wright

---------- Forwarded message ----------
From: "Heather" <heather.munden@gmail.com>
Date: Nov 12, 2015 9:32 PM
Subject: Video of call block
To: "DBL.AUT@gmail.com" <dbl.aut@gmail.com>
Cc:

Sent from my iPhone



1

| | |
|---|---|
| **From:** | Chris Black <crb@crblack.com> |
| **Sent:** | Wednesday, October 28, 2015 9:57 AM |
| **To:** | Tony Matthews |
| **Cc:** | Darryl Wright; Jennings, David R. (USAWAW); Rogers, Joe |
| **Subject:** | Darryl Wright/Darla McDaniel |

Good morning Detective Matthews,

I am writing to follow up on our conversation of yesterday afternoon, to provide you with the statement you requested.

I am an attorney and I represent Darryl Wright in a federal criminal proceeding. On September 23, 2015 I received discovery from the United States Attorney's Office for the Western District of Washington which included a recording of a call between Mr. Wright and his daughter. On September 29, 2015 I spoke to Assistant United States Attorney David Jennings about the recording. Mr. Jennings told me that the government had received the recording from Darla McDaniel. He further indicated that Ms. McDaniel provided the recording completely of her own volition, and that the government had not requested that she make any such recording or been involved in any manner with creating the recording. I cannot recall if Mr. Jennings specifically told me the person to whom Ms. McDaniel gave the recording, and from whom Mr. Jennings received it, but I am virtually certain that it was Special Agent Joe Rogers with the Social Security Administration. This belief is based on the fact that I was also provided copies of numerous emails between Ms. McDaniel and SA Rogers, from which it appeared that SA Rogers was her contact point within the federal government.

Assistant United States Attorney David Jennings, Special Agent Joe Rogers, and Mr. Wright are cc'ed on this email.

Please do not hesitate to contact me if you have any further questions or if there is any further information I can provide.

Chris Black

Christopher Black | Attorney at Law
**Black Law, PLLC**
1111 Hoge Building
705 Second Avenue
Seattle, WA 98104
o: 206.623.1604
f: 206.658.2401
crb@crblack.com
blacklawseattle.com



The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination,

distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please contact the sender by reply email and destroy all copies of the original message.  Thank you.



| | |
|---|---|
| **From:** | Nick Almquist <nalmquist@ci.snoqualmie.wa.us> |
| **Sent:** | Thursday, October 01, 2015 4:17 PM |
| **To:** | Tony Matthews |
| **Cc:** | Steve McCulley |
| **Subject:** | Request for Investigation |
| **Attachments:** | Screenshot_2015-09-29-23-10-29.png; Screenshot_2015-09-29-23-10-16.png; Dad 20SEP2015.m4a |

Tony-

I left you a voice mail concerning this request today.

Please call me for additional details.

Thank you,

NICK

**Captain Nick Almquist**
Snoqualmie Police Department
34825 SE Douglas Street
Snoqualmie, WA 98065
Desk: 425-831-4360
Cell: 425-999-1522
Fax: 425-831-6121

"Leaders become great, not because of their power, but because of their ability to empower others."
    **-John Maxwell**



Providing Police Services for the City of North Bend





**RCW 9.73.080**

## Penalties.

(1) Except as otherwise provided in this chapter, any person who violates RCW **9.73.030** is guilty of a gross misdemeanor.

(2) Any person who knowingly alters, erases, or wrongfully discloses any recording in violation of RCW **9.73.090**(1)(c) is guilty of a gross misdemeanor.

[2000 c 195 § 3; 1989 c 271 § 209; 1967 ex.s. c 93 § 6.]

**Notes:**

> **Intent -- 2000 c 195:** See note following RCW **9.73.090**.

> **Severability -- 1989 c 271:** See note following RCW **9.94A.510**.

> **Severability -- 1967 ex.s. c 93:** See note following RCW **9.73.030**.





# Idaho Statutes

TITLE 18
CRIMES AND PUNISHMENTS

CHAPTER 67
COMMUNICATIONS SECURITY

18-6707. AUTHORIZATION FOR DISCLOSURE AND USE OF INTERCEPTED WIRE, ELECTRONIC OR ORAL COMMUNICATIONS. (1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, electronic or oral communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

(2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, electronic or oral communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire, electronic or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of this state, of the United States or of any state or in any political subdivision thereof.

(4) No otherwise privileged wire, electronic or oral communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character.

(5) When an investigative or law enforcement officer, while engaged in intercepting wire, electronic or oral communications in the manner authorized herein, intercepts wire, electronic or oral communications relating to offenses other than those specified in the order of authorization, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1), (2) and (3) of this section.

History:
    [18-6707, added 1980, ch. 326, sec. 2, p. 837; am. 2002, ch. 223, sec. 7, p. 638.]



 **Idaho Statutes**

TITLE 18
CRIMES AND PUNISHMENTS

CHAPTER 67
COMMUNICATIONS SECURITY

18-6708.  PROCEDURE FOR INTERCEPTION OF WIRE, ELECTRONIC OR ORAL COMMUNICATIONS.  (1)  Each application for an order authorizing the interception of a wire, electronic or oral communication shall be made in writing upon oath or affirmation or by means of an oral affidavit as provided for in the Idaho Rules of Criminal Practice & Procedure to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

(a)  The identity of the individual authorized to make application for said order pursuant to section 18-6706, Idaho Code;

(b)  A full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) except as provided in subsection (11) of this section, a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

(c)  A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d)  A statement of the period of time for which the interception is required to be maintained. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

(e)  A full and complete statement of the facts concerning all previous applications known to the individual making the applications, made to any judge for authorization to intercept wire, electronic or oral communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application; and

(f)  Where the application is for the extension of an order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results.

(2)  The judge may require the applicant to furnish additional testimony or documentary evidence in support of the application.

COPY

(3)   Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing interception of wire, electronic or oral communications within the state of Idaho if the judge determines on the basis of the facts submitted by the applicant that:

(a)   There is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 18-6706, Idaho Code;

(b)   There is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

(c)   Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d)   Except as provided in subsection (11) of this section, there is probable cause for belief that the facilities from which, or the place where, the wire, electronic or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

(4)   Each order authorizing the interception of any wire, electronic or oral communication shall specify:

(a)   The identity of the person, if known, whose communications are to be intercepted;

(b)   The nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;

(c)   A particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;

(d)   The identity of the agency authorized to intercept the communications, and of the person making the application; and

(e)   The period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.

(5)   An order authorizing the interception of a wire, electronic or oral communication shall, upon request of the applicant, direct that a provider of wire or electronic communication service, landlord, custodian, or other person shall furnish the applicant forthwith all information, facilities and technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with the services that such service provider, landlord, custodian or person is providing the person whose communications are to be intercepted. Any provider of wire or electronic communication service, landlord, custodian or other person furnishing such facilities or technical assistance shall be compensated therefor by the applicant for reasonable expenses incurred in providing such facilities or assistance.

(6)   No order entered under this section may authorize the interception of any wire, electronic or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty (30) days. Such thirty (30) day period begins on the earlier of the day on which the investigative or law enforcement officer begins to conduct an interception under the order or ten (10) days after the order is entered. Extensions of an order may be granted, but only upon application for an extension made in accordance with subsection (1) of this section and the court making the findings required by subsection (3) of this section. The periods of extension shall be no longer than the court deems necessary to achieve the purposes for which it was granted and in no event for longer than thirty (30) days for each extension. Every order and extension thereof shall contain a provision that the authorization to

intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty (30) days. In the event the intercepted communication is in a code or foreign language and an expert in that foreign language or code is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception. An interception under this chapter may be conducted in whole or in part by government personnel or by an individual operating under a contract with federal, state or local government and acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception.

(7) Whenever an order authorizing interception is entered pursuant to this chapter, the order may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge may require.

(8) (a) The contents of any wire, electronic or oral communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire, electronic or oral communication under this subsection shall be done in such way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying court and in any event shall be kept for ten (10) years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 18-6707, Idaho Code, for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, electronic or oral communication or evidence derived therefrom under subsection (3) of section 18-6707, Idaho Code.

(b) Applications made and orders granted under this chapter shall be sealed by the judge. Custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge and in any event shall be kept for ten (10) years.

(c) Any violation of the provisions of this subsection may be punished as contempt of the issuing or denying judge.

(d) Within a reasonable time but not later than ninety (90) days after the filing of an application for an order of approval under this section which is denied or the termination of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of:

    (1) The fact of the entry of the order or the application;

    (2) The date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and

    (3) The fact that during the period wire, electronic or oral communications were or were not intercepted.

The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the

COPY

intercepted communications, applications and orders as the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed.

(9)    The contents of any intercepted wire, electronic or oral communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a federal or state court unless each party, not less than ten (10) days before the trial, hearing, or proceeding has been furnished with a copy of the court order and accompanying application under which the interception was authorized. This ten (10) day period may be waived by the court if it finds that it was not possible to furnish the party with the above information ten (10) days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information.

(10)  (a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a state, or a political subdivision thereof, may move to suppress the contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom, on the grounds that:

1.    The communication was unlawfully intercepted;

2.    The order of authorization under which it was intercepted is insufficient on its face; or

3.    The interception was not made in conformity with the order of authorization.

Such motion shall be made before the trial, hearing, or proceeding, pursuant to the Idaho rules of criminal or civil procedure or the hearing rules of the respective body, as applicable.

(b)  In addition to any other right to appeal, the state of Idaho shall have the right to appeal from an order granting a motion to suppress made under paragraph (a) of this subsection. Such appeal shall be taken within thirty (30) days after the date the order was entered.

(c)  The remedies and sanctions described in this section with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications.

(11)  The requirements of subsections (1)(b)(ii) and (3)(d) of this section relating to the specification of the facilities from which, or the place where, the communication is to be intercepted do not apply if:

(a)  In the case of an application with respect to the interception of an oral communication:

(i)    The application contains a full and complete statement as to why such specification is not practical and identifies the person committing the offense and whose communications are to be intercepted; and

(ii)  The judge finds that such specification is not practical; and

(b)  In the case of an application with respect to a wire or electronic communication:

(i)    The application identifies the person believed to be committing the offense and whose communications are to be intercepted and the applicant makes a showing that there is probable cause to believe that the person's actions could have the effect of thwarting interception from a specified facility;

(ii)  The judge finds that such showing has been adequately made; and

(iii) The order authorizing or approving the interception is limited to interception only for such time as it is reasonable to

presume that the person identified in the application is or was reasonably proximate to the instrument through which such communication will be or was transmitted.

(12) An interception of a communication under an order with respect to which the requirements of subsections (1)(b)(ii) and (3)(d) of this section do not apply by reason of subsection (11)(a) of this section shall not begin until the place where the communication is to be intercepted is ascertained by the person implementing the interception order. A provider of wire or electronic communications service that has received an order as provided for in subsection (11)(b) of this section may move the court to modify or quash the order on the ground that its assistance with respect to the interception cannot be performed in a timely or reasonable fashion. The court, upon notice to the state, shall decide such a motion expeditiously.

History:
    [18-6708, added 1980, ch. 326, sec. 2, p. 837; am. 2002, ch. 223, sec. 8, p. 639.]



RCW 9.73.060: Violating right of privacy—Civil action—Liability for damages.

Page 1 of 1

**RCW 9.73.060**

**Violating right of privacy—Civil action—Liability for damages.**

Any person who, directly or by means of a detective agency or any other agent, violates the provisions of this chapter shall be subject to legal action for damages, to be brought by any other person claiming that a violation of this statute has injured his or her business, his or her person, or his or her reputation. A person so injured shall be entitled to actual damages, including mental pain and suffering endured by him or her on account of violation of the provisions of this chapter, or liquidated damages computed at the rate of one hundred dollars a day for each day of violation, not to exceed one thousand dollars, and a reasonable attorney's fee and other costs of litigation.

[2011 c 336 § 324; 1977 ex.s. c 363 § 2; 1967 ex.s. c 93 § 4.]

**NOTES:**

**Severability—1967 ex.s. c 93:** See note following RCW 9.73.030.

# Lake Forest Park Police Department
## Detail

## Case Details:

| | | | | |
|---|---|---|---|---|
| **Case Number:** | 2015-00009568 | | | |
| **Location:** | 17425 BALLINGER WAY NE | **Incident Type:** | Assist Outside Agency | |
| | Lake Forest Park,WA 98155 | **Occured From:** | 09/20/2015 12:00 | |
| | | **Occured Thru:** | 09/30/2015 12:00 | |
| | | **Reported Date:** | 10/12/2015 15:03 Monday | |
| **Reporting Officer ID:** | 5056-Matthews | **Status:** | Closed | **Status Date:** 11/03/2015 |
| **Assigned Bureau:** | Detectives | **Disposition:** | Referred Other Agency/Facility | **Disposition Date:** 11/04/2015 |

### Case Assignments:

| Assigned Officer | Assignment Date/Time | Assignment Type | Assigned By Officer | Due Date/Time |
|---|---|---|---|---|
| 5056-Matthews | 10/22/2015 00:00 | Lead Investigator | 7888-Harden | |

| Associated Cases | Status | Assisting ORIs | Role |
|---|---|---|---|
| Modus Operandi | | Solvability Factors | Weight |

Total:

## Offenses

| No. | Group/ORI | Crime Code | Statute | Description | Counts |
|---|---|---|---|---|---|
| 1 | State | 90Z | 9.73.030 | Intercepting, Recording or Divulging Private Communication | 1 |

# Lake Forest Park Police Department
## Detail

Lake Forest Park Police Department
ORI Number: WA0172600

**Offense #**    1

| | | | |
|---|---|---|---|
| **Group/ORI:** State | **Crime Code:** 90Z | **Statute:** 9.73.030 | **Counts:** 1 | **Attempt/ Commit Code:** Commit |
| **Description:** Intercepting, Recording or Divulging Private Communication | | | **Offense Date:** 09/30/2015 |

| | | |
|---|---|---|
| **NCIC Code:** 090Z | **Scene Code:** Residence/Home | **Bias/Motivation:** _Unknown |
| Offense Status: | Status Date: | Occupancy Code: |
| Arson Code: | **Domestic Code:** No | **Child Abuse:** No |
| **Gang Related:** No | Aiding/Abetting: | Sub-Code: |
| # of Adults: | # of Juveniles: | **IBR Seq. No:** 1 |
| Property Damage Amt.: | Abandoned Structure: | Household Status: |
| Domestic Circumstance: | Carjacking: | |
| Accosting Situation: | Hate Bias Indicator: | Premise Code: |
| Gambling Motivated: | Order of Protection: | Prior Inv - Victim: |
| Prior Inv - Offender: | Anit-reproductive rights crime: | Cargo Theft: |
| Special Circumstances: | Precipitating Event: | |

| Offender Suspected of Using | Victim Suspected of Using | |
|---|---|---|
| Alcohol: | Alcohol: | |
| Drugs: | Drugs: | |
| Computer: | Computer: | |
| Aggravated Assault/ Homicide Circumstances #1: | Aggravated Assault/ Homicide Circumstances #2: | |
| Aggravated Assault/ Homicide Remarks #1: | Aggravated Assault/ Homicide Remarks #2: | |
| Justifiable Homicide Circumstances : | Justifiable Homicide Code : | Larceny Type: |
| Method of Entry Type: | Method of Entry : | |
| Point of Entry: | # of Premises Entered : | |
| Method of Exit Type: | Method of Exit : | |
| Point of Exit: | How Left Scene: | |
| Direction of Travel: | | |
| Counterfeit Type: | Counterfeit Status: | Counterfeit Amount: |

## Subjects

| Type | No. | Name | Address | Phone | Race | Sex | DOB/Age |
|---|---|---|---|---|---|---|---|
| Subject | 1 | McDaniel, Darla Sue | Boise, ID 83717 | (208) | White | Female | 53 |
| Victim | 1 | Wright, Darryl | Snoqualmie, WA 98065 | (208) | | Male | |
| Witness | 1 | Black, Chris | 1111 HOGE BUILDING-705 SECOND AVE Seattle, WA 98104 | (206)623-1604 | | Male | |

# Lake Forest Park Police Department
## Detail

| | |
|---|---|
| **Print Date/Time:** 11/12/2015 17:32 | Lake Forest Park Police Department |
| **Login ID:** howellk | **ORI Number:** WA0172600 |
| **Case Number:** 2015-00009568 | |

**Subject #     1-Subject**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Primary:** | Yes | | | | | | |
| **Name:** | McDaniel, Darla Sue | **Race:** | White | **Sex:** | Female | **DOB:** | |
| **Address:** | | **Height:** | | **Weight:** | | **Build:** | |
| | Boise ID 83717 | **Eyes:** | | **Hair:** | | **Age:** | 53 |
| **Primary Phone:** | (208) | **SSN:** | | **DVL #:** | | **State:** | |
| Resident Type: | | Resident Status: | | | Statement Type: | | |
| Disposition: | | Date: | | | Custody Status: | | |

**Related Offenses**

| Group/ORI | Crime Code | Statute | Description |
|---|---|---|---|
| State | 90Z | 9.73.030 | Intercepting, Recording or Divulging Private Communication |

Related Weapons

Victim/Offender Relationship

Transported By:                Extent of Injury:              Hospital:
Domestic Violence:             Domestic Violence Referrals:   Federal Agencies Involved:
Condition:                     Medical Treatment:

Missing Person Information

The subreport 'subreport2' could not be found at the specified location LFCase_Subjects_Missing. Please verify that th

**Subject #     1-Victim**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Primary:** | No | | | | | | |
| **Name:** | Wright, Darryl | **Race:** | | **Sex:** | Male | | |
| **Address:** | | **Height:** | | **Weight:** | | **Build:** | |
| | Snoqualmie WA 98065 | **Eyes:** | | **Hair:** | | **Age:** | |
| **Primary Phone:** | (208) | **SSN:** | | **DVL #:** | | **State:** | |
| Resident Type: | | Resident Status: | | | Statement Type: | | |
| Disposition: | | Date: | | | Custody Status: | | |

**Related Offenses**

| Group/ORI | Crime Code | Statute | Description |
|---|---|---|---|
| State | 90Z | 9.73.030 | Intercepting, Recording or Divulging Private Communication |

Related Weapons

Victim/Offender Relationship

Transported By:                Extent of Injury:              Hospital:
Domestic Violence:             Domestic Violence Referrals:   Federal Agencies Involved:
Condition:                     Medical Treatment:

Missing Person Information

The subreport 'subreport2' could not be found at the specified location LFCase_Subjects_Missing. Please verify that th

# Lake Forest Park Police Department
## Detail

Lake Forest Park Police Department
**ORI Number:** WA0172600

**Subject #**    <u>1-Witness</u>

| | | | | | |
|---|---|---|---|---|---|
| **Primary:** | No | | | | |
| **Name:** | Black, Chris | **Race:** | | **Sex:** | Male |
| **Address:** | 1111 HOGE BUILDING-705 SECOND AVE | **Height:** | | **Weight:** | **Build:** |
| | Seattle WA 98104 | **Eyes:** | | **Hair:** | **Age:** |
| **Primary Phone:** | (206)623-1604 | **SSN:** | | **DVL #:** | **State:** |
| **Resident Type:** | | **Resident Status:** | | **Statement Type:** | Written |
| **Disposition:** | | **Date:** | | **Custody Status:** | |

<u>Related Offenses</u>

| Group/ORI | Crime Code | Statute | Description |
|---|---|---|---|
| State | 90Z | 9.73.030 | Intercepting, Recording or Divulging Private Communication |

<u>Related Weapons</u>

<u>Victim/Offender Relationship</u>

| | | |
|---|---|---|
| Transported By: | Extent of Injury: | Hospital: |
| Domestic Violence: | Domestic Violence Referrals: | Federal Agencies Involved: |
| Condition: | Medical Treatment: | |

<u>Missing Person Information</u>

The subreport 'subreport2' could not be found at the specified location LFCase_Subjects_Missing. Please verify that th

## Arrests

| Arrest No. | Name | Address | Date/Time | Type | Age |
|---|---|---|---|---|---|

## Property

| Date | Code | Type | Make | Model | Description | Tag No. | Item No. |
|---|---|---|---|---|---|---|---|

## Vehicles

| No. | Role | Vehicle Type | Year | Make | Model | Color | License Plate | State |
|---|---|---|---|---|---|---|---|---|

# Narrative Det. T Matthews 10-17-2015

**NARRATIVE:**
**10-17-15**
**1130 hrs.** On 10/01/15 at approximately 1617 hours, I received an email from Captain Nick Almquist from the Snoqualmie Police department. He also left him a voice mail addressing this case so I called Captain Almquist. He explained to me that a Darryl Wright had sent him an email detailing a conversation that he had with his daughter that had been recorded without his consent. Captain Almquist explained that Mr. Wright's significant other was one of Snoqualmie's city councilpersons and inquired if I could conduct the investigation so that there would be no questions that this would be an unbiased investigation. I told Captain Almquist that he would have to contact my Chief of Police, Steve Sutton and get his approval. Captain Almquist stated he would do that.

**10-12-15** I was assigned by Lake Forest Park Police Chief Sutton to assist the Snoqualmie Police Department and conduct this investigation. I pulled up Washington State RCW 9.73.030 titles "Intercepting, recording, or divulging private communication – Consent required – Exceptions" and printed it out and placed it with the case file. I pulled up Idaho state statute Title 18 Chapter 67 concerning Communications Security and printed it out and placed it with the case file.

**10-17-15**
**1150 hrs.** I called victim Darryl Wright at his listed phone number and left a message requesting he contact me at the PD to review his case. I printed out the original email from Captain Almquist and placed it with the case file. There were three attachments. Two attachments were one page each and appear to be screen shots from the cell phone (208)█████. This appears to be the phone number listed for subject Darla McDaniel. I printed the screen shots and placed them with the case file. The last attachment was titled 20SEP2015.m4a and appears to be a recording between Darryl Wright and a young female. I listened to the recording. I then burned two copies onto CD's and placed both copies with the case file. One was marked "Original" and the other "Copy".

I then reviewed the email from Capt. Almquist. The second and third pages of the email are a communication to Captain Almquist from V-Darryl Wright. Mr. Wright's email was as follow:

"Capt. Almquist,

My King County family law attorney, Terry Zundel, recomme3nded I file a criminal complaint with my local law enforcement, and my significant other, Heather (copied), recommended I contact you specifically.

This situation may be unique for your officers to investigate, but since I was a victim when the alleged crime took place, while I was in my Snoqualmie home at 7118 Curtis DR SE, I feel it is most appropriate for me to reach out to the Snoqualmie Police Department.

In addition to the son Heather and I raise together in Snoqualmie, we also have a 12 year-old daughter █████ ███████ that I have from a previous relationship from when I lived in Boise, Idaho. I have joint legal custody of █████ along with her mom, Darla McDaniel. This shared custody involves █████ traveling to Snoqualmie frequently, as well as me spending one week each month with █████ in Boise during the school year. During other periods, █████ lives with her mom in Boise, and █████ is a 7th grader at Les Bois Junior High School in Boise.

**SURROUNDING FACTS**
The custodial case re: █████ has been heavily litigated since my return from Iraq in Late-2005. Under the current parenting plan █████ is to call me from Boise during the evenings on Wednesday's and Sundays throughout the year. Washington's applicable RCW requires two-party consent when recording telephone conversations. Conversely, Idaho is a one-party consent state. As you are aware, earlier this year I received a federal indictment for allegations of fraud. I pleaded "not guilty" and am scheduled for a federal trial, starting March 29, 2016. Earlier this summer the custodial parenting plan with █████ was modified in King County and the venue was transferred to Ada County, Idaho (Boise). Currently, residual child support court actions are taking place in Ada County and are scheduled to conclude in 2016.

**CRIMINAL SITUATION**
On Sunday, September 20, 2015, █████ and I talked on the phone during our regularly scheduled time, while Heather and I were in our residence in Snoqualmie and █████ was at her mother's home in Boise. (I do not know for certain █████ was at Darla's home, but that is where █████ told me where she was, and I have no reason to not believe her.) I attached the screen shots of the phone calls between me and █████ which were taken on my cell phone (208-███████) and Darla's cell phone (208█████████).

Recently my federal criminal attorney, Chris Black, received discovery from AUSA David R. Jennings, which surprisingly included an audio recording of my Sunday, September 20, 2015 telephone conversation between me and █████. He confirmed with the AUSA that the federal government did not have a court order to recorded this conversation or a warrant, and that Mr. Jennings "said that Darla provided them the recording. The government had no advance involvement or notice." I never consented to this conversation

being recorded. I am with my daughter right now in Boise, and she confirms to me that she did not record our telephone conversation, she does not know how to record

our telephone conversations, and does not know who could have recorded our telephone conversation. My concern is Darla is illegally recorded my telephone conversations with my daughter, and she will use these illegal recordings, just as she supplied them to the feds, during our current custody proceedings in Ada County, Idaho, where one-party consent is all that is needed to enter a recording as evidence in Idaho.

I realize the Snoqualmie Police Department does not have any detectives on staff, but I respectfully request that your department allocate the attention my situation deserves, so I do not continue to be victimized. If your department does not have3 the resources, then I request your forward my criminal complaint to Issaquah, where you have a business relationship and which their police department does have police detectives on staff.

My King County family law attorney confirmed with me earlier this week that it is her opinion if Darla recorded my conversation with _____ this action is illegal, as the RCW has an interstate communication recording clause. Most importantly I want Darla to cease all illegal activities regarding my phone conversations with my daughter, and I know legal intervention in WA is the most effective course of action. I definitely do not want her to have an illegal disadvantage as the custody process in Idaho processes.

_____ and I will be in Snoqualmie this Thursday evening (through Sunday, October 4th). I talked with her, and she is comfortable (as am I) being interviewed by police regarding this matter. I will make her available for such an interview.

Please do not hesitate to call me with an question. Any help you can provide is greatly appreciated.

Thank you.
Darryl Wright
208-_____

I reviewed Washington State RCW 9.73.030 – Intercepting, recording, or divulging private communication -- Consent required – Exceptions.

Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:


Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designated to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;

Private conversation, by any device electronic or otherwise designated to record or transmit such conversation regardless how the devise is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

Notwithstanding subsection (1) of this section, wire communications or conversations (a) of an emergency nature, such as the reporting of a fire, medical emergency, crime, or disaster, or (b) which convey threats of extortion, blackmail, bodily harm, or other unlawful requests or demands, or (c) which occur anonymously or repeatedly or at an extremely inconvenient hour, or (d) which relate to communications by a hostage holder or barricaded person as defined in RCW 70.85.100, whether or not conversation ensues, may be recorded with the consent of one party to the conversation.

Where consent by all parties is needed pursuant to this chapter, consent shall be considered obtained whenever one party has announced to all other parties engaged in the communication or conversation, in any reasonably effective manner, that such communication or conversation is about to be recorded or transmitted: PROVIDED, That if the conversation is to be recorded that said announcement shall also be recorded.

An employee of any regularly published newspaper, magazine, wire service, radio station, or television station acting in the course of bona fide news gathering duties on a full-time or contractual or part-time basis, shall be deemed to have consent to record and divulge communications or conversations otherwise prohibited by this chapter if the consent is expressly given or if the recording or transmitting device is readily apparent or obvious to the speakers. Withdrawal of the consent after the communication has been made shall not prohibit any such employee of a newspaper, magazine, wire service, or radio or television station from divulging the communications or conversation.

1428 hrs. I called victim Darryl Wright at his listed phone number and left a message requesting he contact me at the PD to review his case. Wright returned my phone call and I obtained additional information for this case.

10-26-15
1530 hrs. I called King County DPA Charles Sherer and discussed this case with him. After reviewing the RCW, Sherer believes the

recording was illegal. Sherer stated that his court would not have jurisdiction over the case because violation of this RCW is a Gross Misdemeanor.

1555 hrs. I called Snoqualmie Captain Almquist and left a message providing an update with this investigation.

1600 hrs. I reviewed the email again from V-Darryl Wright and noted that his attorney, Chris Black received discovery from AUSA David Jennings that included the recording of a phone conversation he had with his daughter on 09/20/15 and that Darryl did not give permission for anyone to conduct the recording. In his email, V-Wright states that Chris Black told him that (AUSA) David Jennings said that Darla, his ex, provided them the recording.

1605 hrs. I called subject Darla McDaniel at 208-███████ to inquire if she made the recording that was submitted to AUSA David Jennings. I received a phone messaging system and left a message requesting she contact me at the PD.

1610 hrs. I called Lynn Moberly, the prosecutor for the City of Snoqualmie at 425-837-3173 and left a message requesting she contact me at the PD about this case.

1620 hrs. Subject Darla McDaniel returned my phone call and I explained that a complaint had been forwarded to the Snoqualmie Police Department about a violation of this state's two-party consent for recordings. I explained that because her ex's significant other is a city councilperson in Snoqualmie, the Snoqualmie Police Department contacted my Chief and requested that I conduct the investigation. McDaniel told me that she lives in a one-party consent state and I told her that I consulted with a prosecutor here and that if someone calling from a one-party consent state records a person here in Washington State without their permission, it is a violation of the RCW in this state and is a Gross Misdemeanor. Darla told me that she has an attorney and thought she should speak to them before talking to me. I asked her to let me know her decision and our conversation ended.

1630 hrs. I called Darryl Wright and left a message requesting he contact me at the PD and provide me with his attorney's phone number (Chris Black).

2343 hrs. V-Wright left me a message stating that the phone number for his attorney, Chris Black was 206-███████.

10-27-15
1050 hrs. I called Chris Black's office and left my phone number with the receptionist.

1035 hrs. I received a message from Chris Black. I called his office and briefly spoke with him about this case. At my request, Mr. Black will send an email detailing his conversation with AUSA David Jennings pertaining to who provided him with the recording that V-Wright forwarded to me.

10-28-15
0957 hrs. I received an email from Chris Black, the attorney for Darry Wright. His email was as follows:

"Good morning Detective Matthews,

I am writing to follow up on our conversation of yesterday afternoon, to provide you with the statement you requested.

I am an attorney and I represent Darry Wright in a federal criminal proceeding. On September 23, 2015 I received discovery from the United States Attorney's Office for the Western District of Washington which included a recording of a call between Mr. Wright and his daughter. On September 29, 2015 I spoke to Assistant United States Attorney David Jennings about the recording. Mr. Jennings told me that the government had received the recording from Darla McDaniel. He further indicated that Ms. McDaniel provided the recording completely of her own volition, and that the government had not requested that she make any such recording or been involved in any manner with creating the recording. I cannot recall if Mr. Jennings specifically told me the person whom Ms. McDaniel gave the recording, and from whom Mr. Jennings received it, but I am virtually certain that it was Special Agent Joe Rogers with the Social Security Administration. This belief is based on the fact that I was also provided copies of numerous emails between Ms. McDaniel and SA Rogers, from which it appeared that SA Rogers was her contact point within the federal government.

Assistant United States Attorney David Jennings, Special Agent Joe Rogers, and Mr. Wright are cc'ed on this email.

Please do not hesitate to contact me if you have any further questions or if there is any further information I can provide.

Chris Black"

I placed the email with the case file. I have not heard a response from subject Darla McDaniel since she stated she was going to speak with her attorney. I am forwarding this case to the City of Snoqualmie Municipal Court Prosecutor Lynn Moberly for review. It is my understanding that she will be forwarding this case to another local prosecutor for review due to a conflict. I recommend this case be reviewed to determine if charges should be filed in this case.

| | |
|---|---|
| **From:** | Chris Black <crb@crblack.com> |
| **Sent:** | Wednesday, October 28, 2015 9:57 AM |
| **To:** | Tony Matthews |
| **Cc:** | Darryl Wright; Jennings, David R. (USAWAW); Rogers, Joe |
| **Subject:** | Darryl Wright/Darla McDaniel |

Good morning Detective Matthews,

I am writing to follow up on our conversation of yesterday afternoon, to provide you with the statement you requested.

I am an attorney and I represent Darryl Wright in a federal criminal proceeding. On September 23, 2015 I received discovery from the United States Attorney's Office for the Western District of Washington which included a recording of a call between Mr. Wright and his daughter. On September 29, 2015 I spoke to Assistant United States Attorney David Jennings about the recording. Mr. Jennings told me that the government had received the recording from Darla McDaniel. He further indicated that Ms. McDaniel provided the recording completely of her own volition, and that the government had not requested that she make any such recording or been involved in any manner with creating the recording. I cannot recall if Mr. Jennings specifically told me the person to whom Ms. McDaniel gave the recording, and from whom Mr. Jennings received it, but I am virtually certain that it was Special Agent Joe Rogers with the Social Security Administration. This belief is based on the fact that I was also provided copies of numerous emails between Ms. McDaniel and SA Rogers, from which it appeared that SA Rogers was her contact point within the federal government.

Assistant United States Attorney David Jennings, Special Agent Joe Rogers, and Mr. Wright are cc'ed on this email.

Please do not hesitate to contact me if you have any further questions or if there is any further information I can provide.

Chris Black

Christopher Black | Attorney at Law
**Black Law, PLLC**
1111 Hoge Building
705 Second Avenue
Seattle, WA 98104
o: 206.623.1604
f: 206.658.2401
crb@crblack.com
blacklawseattle.com



The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination,

distribution, or copying of this communication, or any of its contents. is strictly prohibited. If you have received this communication in error, please contact the sender by reply email and destroy all copies of the original message.  Thank you.

**RCW 9.73.080**

## Penalties.

(1) Except as otherwise provided in this chapter, any person who violates RCW **9.73.030** is guilty of a gross misdemeanor.

(2) Any person who knowingly alters, erases, or wrongfully discloses any recording in violation of RCW **9.73.090**(1)(c) is guilty of a gross misdemeanor.

[2000 c 195 § 3; 1989 c 271 § 209; 1967 ex.s. c 93 § 6.]

**Notes:**

    **Intent -- 2000 c 195:** See note following RCW **9.73.090**.

    **Severability -- 1989 c 271:** See note following RCW **9.94A.510**.

    **Severability -- 1967 ex.s. c 93:** See note following RCW **9.73.030**.

**RCW 9.73.030**

# Intercepting, recording, or divulging private communication — Consent required — Exceptions.

(1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:

(a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;

(b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

(2) Notwithstanding subsection (1) of this section, wire communications or conversations (a) of an emergency nature, such as the reporting of a fire, medical emergency, crime, or disaster, or (b) which convey threats of extortion, blackmail, bodily harm, or other unlawful requests or demands, or (c) which occur anonymously or repeatedly or at an extremely inconvenient hour, or (d) which relate to communications by a hostage holder or barricaded person as defined in RCW **70.85.100**, whether or not conversation ensues, may be recorded with the consent of one party to the conversation.

(3) Where consent by all parties is needed pursuant to this chapter, consent shall be considered obtained whenever one party has announced to all other parties engaged in the communication or conversation, in any reasonably effective manner, that such communication or conversation is about to be recorded or transmitted: PROVIDED, That if the conversation is to be recorded that said announcement shall also be recorded.

(4) An employee of any regularly published newspaper, magazine, wire service, radio station, or television station acting in the course of bona fide news gathering duties on a full-time or contractual or part-time basis, shall be deemed to have consent to record and divulge communications or conversations otherwise prohibited by this chapter if the consent is expressly given or if the recording or transmitting device is readily apparent or obvious to the speakers. Withdrawal of the consent after the communication has been made shall not prohibit any such employee of a newspaper, magazine, wire service, or radio or television station from divulging the communication or conversation.

[1986 c 38 § 1; 1985 c 260 § 2; 1977 ex.s. c 363 § 1; 1967 ex.s. c 93 § 1.]

Notes:

   **Reviser's note:** This section was amended by 1985 c 260 § 2 and by 1986 c 38 § 1, each without reference to the other. Both amendments are incorporated in the publication of this

section under RCW **1.12.025**(2). For rule of construction, see RCW **1.12.025**(1).

**Severability -- 1967 ex.s. c 93:** "If any provision of this act, or its application to any person or circumstance is held invalid, the remainder of the act, or the application of the provision to other persons or circumstances is not affected." [1967 ex.s. c 93 § 7.]

## RCW 70.85.100

## Authority to isolate telephones in barricade or hostage situation — Definitions.

(1) The supervising law enforcement official having jurisdiction in a geographical area who reasonably believes that a person is barricaded, or one or more persons are holding another person or persons hostage within that area may order a telephone company employee designated pursuant to RCW **70.85.110** to arrange to cut, reroute, or divert telephone lines for the purpose of preventing telephone communications between the barricaded person or hostage holder and any person other than a peace officer or a person authorized by the peace officer.

(2) As used in this section:

(a) A "hostage holder" is one who commits or attempts to commit any of the offenses described in RCW **9A.40.020**, **9A.40.030**, or **9A.40.040**; and

(b) A "barricaded person" is one who establishes a perimeter around an area from which others are excluded and either:

(i) Is committing or is immediately fleeing from the commission of a violent felony; or

(ii) Is threatening or has immediately prior threatened a violent felony or suicide; or

(iii) Is creating or has created the likelihood of serious harm within the meaning of chapter 71.05 RCW relating to mental illness.

[1985 c 260 § 1; 1979 c 28 § 1.]

 **Idaho Statutes**

TITLE 18
CRIMES AND PUNISHMENTS

CHAPTER 67
COMMUNICATIONS SECURITY

18-6702.  INTERCEPTION AND DISCLOSURE OF WIRE, ELECTRONIC OR ORAL
COMMUNICATIONS PROHIBITED. (1) Except as otherwise specifically provided in
this chapter, any person shall be guilty of a felony and is punishable by
imprisonment in the state prison for a term not to exceed five (5) years or
by a fine not to exceed five thousand dollars ($5,000), or by both fine and
imprisonment if that person:
    (a)  Willfully intercepts, endeavors to intercept, or procures any
other person to intercept or endeavor to intercept any wire, electronic
or oral communication; or
    (b)  Willfully uses, endeavors to use, or procures any other person to
use or endeavor to use any electronic, mechanical, or other device to
intercept any oral communication when:
        1.  Such device is affixed to, or otherwise transmits a signal
        through, a wire, cable, or other like connection used in wire
        communication; or
        2.  Such device transmits communications by radio or interferes
        with the transmission of such communication; or
    (c)  Willfully discloses, or endeavors to disclose, to any other person
the contents of any wire, electronic or oral communication, knowing or
having reason to know that the information was obtained through the
interception of a wire, electronic or oral communication in violation
of this subsection; or
    (d)  Willfully uses, or endeavors to use, the contents of any wire,
electronic or oral communication, knowing or having reason to know that
the information was obtained through the interception of a wire,
electronic or oral communication in violation of this subsection; or
    (e)  Intentionally discloses or endeavors to disclose to any other
person the contents of any wire, electronic or oral communication,
intercepted by means authorized by subsection (2)(b), (c), (f) or (g)
of this section or by section 18-6708, Idaho Code, if that person:
        (i)   Knows or has reason to know that the information was
        obtained through the interception of such communication in
        connection with a criminal investigation; and
        (ii)  Has obtained or received the information in connection with
        a criminal investigation with the intent to improperly obstruct,
        impede or interfere with a duly authorized criminal investigation.
    (2)    (a)  It is lawful under this chapter for an operator of a
switchboard, or an officer, employee, or agent of a provider of wire or
electronic communication service whose facilities are used in the
transmission of a wire or electronic communication to intercept,
disclose, or use that communication in the normal course of his
employment while engaged in any activity which is a necessary incident

to the rendition of his service or to the protection of the rights or property of the provider of that service, except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

(b)    It is lawful under this chapter for an officer, employee, or agent of the federal communications commission, in the normal course of his employment and in discharge of the monitoring responsibilities exercised by the commission in the enforcement of 47 U.S.C. ch. 5, to intercept a wire, electronic or oral communication transmitted by radio or to disclose or use the information thereby obtained.

(c)    It is lawful under this chapter for a law enforcement officer or a person acting under the direction of a law enforcement officer to intercept a wire, electronic or oral communication when such person is a party to the communication or one (1) of the parties to the communication has given prior consent to such interception.

(d)    It is lawful under this chapter for a person to intercept a wire, electronic or oral communication when one (1) of the parties to the communication has given prior consent to such interception.

(e)    It is unlawful to intercept any communication for the purpose of committing any criminal act.

(f)    It is lawful under this chapter for an employee of a telephone company to intercept a wire communication for the sole purpose of tracing the origin of such communication when the interception is requested by an appropriate law enforcement agency or the recipient of the communication and the recipient alleges that the communication is obscene, harassing, or threatening in nature.

(g)    It is lawful under this chapter for an employee of a law enforcement agency, fire department or ambulance service, while acting in the scope of his employment, and while a party to the communication, to intercept and record incoming wire or electronic communications.

(h)    It shall not be unlawful under this chapter for any person:

    (i)    To intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public;

    (ii)    To intercept any radio communication that is transmitted:

        (A)    By any station for the use of the general public, or that relates to ships, aircraft, vehicles or persons in distress;

        (B)    By any governmental, law enforcement, civil defense, private land mobile or public safety communications system, including police and fire, readily accessible to the public;

        (C)    By a station operating on an authorized frequency within the bands allocated to the amateur, citizens band or general mobile radio services; or

        (D)    By any marine or aeronautical communication system;

    (iii)    To engage in any conduct that:

        (A)    Is prohibited by 47 U.S.C. section 553 (federal communications act of 1934); or

        (B)    Is excepted from the application of 47 U.S.C. section 605 (federal communications act of 1934);

    (iv)    To intercept any wire or electronic communication, the transmission of which is causing harmful interference to any lawfully operating station or consumer electronic equipment to the extent it is necessary to identify the source of such interference; or

    (v)    For other users of the same frequency to intercept any radio

communication, if such communication is not scrambled or encrypted, made through a system that utilizes frequencies monitored by individuals engaged in the provision or the use of such system.

(i)   It shall be lawful under this chapter for a provider of electronic communication service to record the fact that a wire or electronic communication was initiated or completed in order to protect such provider, another provider furnishing service toward the completion of the wire or electronic communication or a user of that service from the fraudulent, unlawful or abusive use of such service.

(3)   (a) Except as provided in subsection (3)(b) of this section, a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication other than to such person or entity or an agent thereof while in transmission on that service, to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient.

(b)   A person or entity providing electronic communication service to the public may divulge the contents of any such communication:

(i)    As otherwise authorized in section 18-6707, Idaho Code, or subsection (2)(a) of this section;

(ii)   With the lawful consent of the originator or any addressee or intended recipient of such communication;

(iii) To a person employed or authorized, or whose facilities are used, to forward such communication to its destination; or

(iv)  If such contents were inadvertently obtained by the service provider and appear to pertain to the commission of a crime, if such divulgence is made to a law enforcement agency.

History:

[18-6702, added 1980, ch. 326, sec. 2, p. 834; am. 2002, ch. 223, sec. 2, p. 634; am. 2004, ch. 303, sec. 1, p. 849.]

 **Idaho Statutes**

TITLE 18
CRIMES AND PUNISHMENTS

CHAPTER 67
COMMUNICATIONS SECURITY

18-6707.   AUTHORIZATION FOR DISCLOSURE AND USE OF INTERCEPTED WIRE,
ELECTRONIC OR ORAL COMMUNICATIONS. (1) Any investigative or law enforcement
officer who, by any means authorized by this chapter, has obtained knowledge
of the contents of any wire, electronic or oral communication, or evidence
derived therefrom, may disclose such contents to another investigative or
law enforcement officer to the extent that such disclosure is appropriate to
the proper performance of the official duties of the officer making or
receiving the disclosure.
     (2)  Any investigative or law enforcement officer who, by any means
authorized by this chapter, has obtained knowledge of the contents of any
wire, electronic or oral communication or evidence derived therefrom may use
such contents to the extent such use is appropriate to the proper
performance of his official duties.
     (3)  Any person who has received, by any means authorized by this
chapter, any information concerning a wire, electronic or oral
communication, or evidence derived therefrom intercepted in accordance with
the provisions of this chapter may disclose the contents of that
communication or such derivative evidence while giving testimony under oath
or affirmation in any criminal proceeding in any court of this state, of the
United States or of any state or in any political subdivision thereof.
     (4)  No otherwise privileged wire, electronic or oral communication
intercepted in accordance with, or in violation of, the provisions of this
chapter shall lose its privileged character.
     (5)  When an investigative or law enforcement officer, while engaged in
intercepting wire, electronic or oral communications in the manner
authorized herein, intercepts wire, electronic or oral communications
relating to offenses other than those specified in the order of
authorization, the contents thereof, and evidence derived therefrom, may be
disclosed or used as provided in subsections (1), (2) and (3) of this
section.

History:
     [18-6707, added 1980, ch. 326, sec. 2, p. 837; am. 2002, ch. 223, sec.
7, p. 638.]

 **Idaho Statutes**

TITLE 18
CRIMES AND PUNISHMENTS

CHAPTER 67
COMMUNICATIONS SECURITY

18-6708.    PROCEDURE FOR INTERCEPTION OF WIRE, ELECTRONIC OR ORAL
COMMUNICATIONS.  (1)  Each  application  for  an  order  authorizing  the
interception of a wire, electronic or oral communication shall be made in
writing upon oath or affirmation or by means of an oral affidavit as
provided for in the Idaho Rules of Criminal Practice & Procedure to a judge
of competent jurisdiction and shall state the applicant's authority to make
such application. Each application shall include the following information:
    (a)   The identity of the individual authorized to make application for
said order pursuant to section 18-6706, Idaho Code;
    (b)    A  full  and  complete  statement  of  the  facts  and  circumstances
relied upon by the applicant, to justify his belief that an order
should be issued including (i) details as to the particular offense
that has been, is being, or is about to be committed, (ii) except as
provided in subsection (11) of this section, a particular description
of the nature and location of the facilities from which or the place
where the communication is to be intercepted, (iii) a particular
description of the type of communications sought to be intercepted,
(iv) the identity of the person, if known, committing the offense and
whose communications are to be intercepted;
    (c)    A  full  and  complete  statement  as  to  whether  or  not  other
investigative procedures have been tried and failed or why they
reasonably appear to be unlikely to succeed if tried or to be too
dangerous;
    (d)    A statement of the period of time for which the interception is
required to be maintained. If the nature of the investigation is such
that the authorization for interception should not automatically
terminate when the described type of communication has been first
obtained, a particular description of facts establishing probable cause
to believe that additional communications of the same type will occur
thereafter;
    (e)    A full and complete statement of the facts concerning all previous
applications known to the individual making the applications, made to
any judge for authorization to intercept wire, electronic or oral
communications involving any of the same persons, facilities or places
specified in the application, and the action taken by the judge on each
such application; and
    (f)    Where the application is for the extension of an order, a
statement setting forth the results thus far obtained from the
interception, or a reasonable explanation of the failure to obtain such
results.
    (2)    The judge may require the applicant to furnish additional
testimony or documentary evidence in support of the application.

(3) Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing interception of wire, electronic or oral communications within the state of Idaho if the judge determines on the basis of the facts submitted by the applicant that:

(a) There is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 18-6706, Idaho Code;

(b) There is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

(c) Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d) Except as provided in subsection (11) of this section, there is probable cause for belief that the facilities from which, or the place where, the wire, electronic or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

(4) Each order authorizing the interception of any wire, electronic or oral communication shall specify:

(a) The identity of the person, if known, whose communications are to be intercepted;

(b) The nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;

(c) A particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;

(d) The identity of the agency authorized to intercept the communications, and of the person making the application; and

(e) The period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.

(5) An order authorizing the interception of a wire, electronic or oral communication shall, upon request of the applicant, direct that a provider of wire or electronic communication service, landlord, custodian, or other person shall furnish the applicant forthwith all information, facilities and technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with the services that such service provider, landlord, custodian or person is providing the person whose communications are to be intercepted. Any provider of wire or electronic communication service, landlord, custodian or other person furnishing such facilities or technical assistance shall be compensated therefor by the applicant for reasonable expenses incurred in providing such facilities or assistance.

(6) No order entered under this section may authorize the interception of any wire, electronic or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty (30) days. Such thirty (30) day period begins on the earlier of the day on which the investigative or law enforcement officer begins to conduct an interception under the order or ten (10) days after the order is entered. Extensions of an order may be granted, but only upon application for an extension made in accordance with subsection (1) of this section and the court making the findings required by subsection (3) of this section. The periods of extension shall be no longer than the authorizing court deems necessary to achieve the purposes for which it was granted and in no event for longer than thirty (30) days for each extension. Every order and extension thereof shall contain a provision that the authorization to

intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty (30) days. In the event the intercepted communication is in a code or foreign language and an expert in that foreign language or code is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception. An interception under this chapter may be conducted in whole or in part by government personnel or by an individual operating under a contract with federal, state or local government and acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception.

(7)   Whenever an order authorizing interception is entered pursuant to this chapter, the order may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge may require.

(8)   (a) The contents of any wire, electronic or oral communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire, electronic or oral communication under this subsection shall be done in such way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying court and in any event shall be kept for ten (10) years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 18-6707, Idaho Code, for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, electronic or oral communication or evidence derived therefrom under subsection (3) of section 18-6707, Idaho Code.

(b)   Applications made and orders granted under this chapter shall be sealed by the judge. Custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge and in any event shall be kept for ten (10) years.

(c)   Any violation of the provisions of this subsection may be punished as contempt of the issuing or denying judge.

(d)   Within a reasonable time but not later than ninety (90) days after the filing of an application for an order of approval under this section which is denied or the termination of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of:

(1)   The fact of the entry of the order or the application;

(2)   The date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and

(3)   The fact that during the period wire, electronic or oral communications were or were not intercepted.

The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the

intercepted communications, applications and orders as the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed.

(9)   The contents of any intercepted wire, electronic or oral communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a federal or state court unless each party, not less than ten (10) days before the trial, hearing, or proceeding has been furnished with a copy of the court order and accompanying application under which the interception was authorized. This ten (10) day period may be waived by the court if it finds that it was not possible to furnish the party with the above information ten (10) days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information.

(10)  (a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a state, or a political subdivision thereof, may move to suppress the contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom, on the grounds that:

  1.   The communication was unlawfully intercepted;
  2.   The order of authorization under which it was intercepted is insufficient on its face; or
  3.   The interception was not made in conformity with the order of authorization.

Such motion shall be made before the trial, hearing, or proceeding, pursuant to the Idaho rules of criminal or civil procedure or the hearing rules of the respective body, as applicable.

(b)  In addition to any other right to appeal, the state of Idaho shall have the right to appeal from an order granting a motion to suppress made under paragraph (a) of this subsection. Such appeal shall be taken within thirty (30) days after the date the order was entered.

(c)  The remedies and sanctions described in this section with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications.

(11)  The requirements of subsections (1)(b)(ii) and (3)(d) of this section relating to the specification of the facilities from which, or the place where, the communication is to be intercepted do not apply if:

(a)  In the case of an application with respect to the interception of an oral communication:

   (i)   The application contains a full and complete statement as to why such specification is not practical and identifies the person committing the offense and whose communications are to be intercepted; and
   (ii)  The judge finds that such specification is not practical; and

(b)  In the case of an application with respect to a wire or electronic communication:

   (i)   The application identifies the person believed to be committing the offense and whose communications are to be intercepted and the applicant makes a showing that there is probable cause to believe that the person's actions could have the effect of thwarting interception from a specified facility;
   (ii)  The judge finds that such showing has been adequately made; and
   (iii) The order authorizing or approving the interception is limited to interception only for such time as it is reasonable to

presume that the person identified in the application is or was reasonably proximate to the instrument through which such communication will be or was transmitted.

(12) An interception of a communication under an order with respect to which the requirements of subsections (1)(b)(ii) and (3)(d) of this section do not apply by reason of subsection (11)(a) of this section shall not begin until the place where the communication is to be intercepted is ascertained by the person implementing the interception order. A provider of wire or electronic communications service that has received an order as provided for in subsection (11)(b) of this section may move the court to modify or quash the order on the ground that its assistance with respect to the interception cannot be performed in a timely or reasonable fashion. The court, upon notice to the state, shall decide such a motion expeditiously.

History:
    [18-6708, added 1980, ch. 326, sec. 2, p. 837; am. 2002, ch. 223, sec. 8, p. 639.]

**From:** dbl.aut@gmail.com [mailto:dbl.aut@gmail.com] On Behalf Of Darryl?Wright
**Sent:** Tuesday, September 29, 2015 10:54 PM
**To:** Nick Almquist <nalmquist@ci.snoqualmie.wa.us>
**Cc:** Heather Munden <heather.munden@gmail.com>
**Subject:** Fwd: Police Captain

Capt. Almquist,

My King County family law attorney, Terry Zundel, recommended I file a criminal complaint with my local law enforcement, and my significant other, Heather (copied), recommended I contact you specifically.

This situation may be unique for your officers to investigate, but since I was a victim when the alleged crime took place, while I was in my Snoqualmie home at ▓▓▓▓▓▓▓▓ I feel it is most appropriate for me to reach out to the Snoqualmie Police Department.

In addition to the son Heather and I raise together in Snoqualmie, we also have a 12-year old daughter, ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓, that I have from a previous relationship from when I lived in Boise, Idaho. I have joint legal custody of ▓▓▓▓▓ along with her mom, Darla McDaniel. This shared custody involves ▓▓▓ traveling to Snoqualmie frequently, as well as me spending one week each month with ▓▓▓ in Boise during the school year. During other periods, ▓▓▓▓ lives with her mom in Boise, and ▓▓▓ is a 7th grader at Les Bois Junior High School in Boise.

## SURROUNDING FACTS
The custodial case re: ▓▓▓▓ has been heavily litigated since my return from Iraq in late-2005. Under the current parenting plan ▓▓▓▓ is to call me from Boise during the evenings on Wednesdays and Sundays throughout the year. Washington's applicable RCW requires two-party consent when recording telephone conversations. Conversely, Idaho is a one-party consent state. As you are aware, earlier this year I received a federal indictment for allegations of fraud. I pleaded "not guilty" and am scheduled for a federal trial, starting March 29, 2016. Earlier this summer the custodial parenting plan with ▓▓▓▓ was modified in King County and the venue was transferred to Ada County, Idaho (Boise). Currently, residual child support court actions are taking place in Ada County and are scheduled to conclude in 2016.

## CRIMINAL SITUATION
On Sunday, September 20, 2015, ▓▓▓▓ and I talked on the phone during our regularly scheduled time, while Heather and I were in our residence in Snoqualmie and ▓▓▓ was at her mother's home in Boise. (I do not know for certain ▓▓▓▓ was at Darla's home, but that is where ▓▓▓▓ told me where she was, and I have no reason to not believe her.) I attached the screen shots of the phone calls between me and ▓▓▓, which were taken on my cell phone (208-▓▓▓▓ and Darla's cell phone (208-▓▓▓▓▓.

Recently my federal criminal attorney, Chris Black, received discovery from AUSA David R. Jennings, which surprisingly included an audio recording of my Sunday, September 20, 2015 telephone conversation between me and ▓▓▓ He confirmed with the AUSA that the federal government did not have a court order to recorded this conversation or a warrant, and that Mr. Jennings "said that Darla provided them the recording. The government had no advance involvement or notice." I never consented to this conversation being recorded. I am with my daughter right now in Boise, and she confirms to me that she did not record our telephone conversation, she does not know how to record our telephone conversation, and does not know who could have recorded our telephone conversation.

My concern is Darla is illegally recorded my telephone conversations with my daughter, and she will use these illegal recordings, just as she supplied them to the feds, during our current custody proceedings in Ada County, Idaho, where one-party consent is all that is needed to enter a recording as evidence in Idaho.

I realize the Snoqualmie Police Department does not have any detectives on staff, but I respectfully request that your department allocate the attention my situation deserves, so I do not continue to be victimized. If your department does not have the resources, then I request your forward my criminal complaint to Issaquah, where you have a business relationship and which thier police department does have police detectives on staff.

**My King County family law attorney confirmed with me earlier this week that it is her opinion if Darla recorded my conversation with** ▓▓▓▓ **this action is illegal,** as the RCW has an interstate communication recording clause. Most importantly I want Darla to cease all illegal activities regarding my phone conversations with my daughter, and I know legal intervention in WA is the most effective course of action. I definitely do not want her to have an illegal disadvantage as the custody process in Idaho processes.

▓▓▓▓ **and I will be in Snoqualmie this Thursday evening (through Sunday, October 4th). I talked with her, and she is comfortable (as am I) being interviewed by police regarding this matter. I will make her available for such an interview.**

Please do not hesitate to call me with an questions. Any help you can provide is greatly appreciated.

Thank you,
Darryl Wright
208-▓▓▓▓

---------- Forwarded message ----------
From: **Heather Munden** <heather.munden@gmail.com>
Date: Tue, Sep 29, 2015 at 8:33 PM
Subject: Re: Police Captain
To: Darryl★Wright <dwright.usa@gmail.com>

Captain Nick Almquist:

email: nalmquist@ci.snoqualmie.wa.us

phone number: 425.888.3333

On Tue, Sep 29, 2015 at 6:14 PM, Darryl★Wright <dwright.usa@gmail.com> wrote:

Do you have Captain A's email address?



DSM (5)
(208)

 View contact

Email 

📞 ➡️ Sep 20 (Sun) 18:42
00:00:39
Boise, ID

📞 ➡️ Sep 20 (Sun) 18:42
00:00:11
Boise, ID

📞 ➡️ Sep 20 (Sun) 18:41
00:00:10
Boise, ID

📞 ⬅️ Sep 20 (Sun) 18:33
00:07:16
Boise, ID

📞 ⬅️ Sep 20 (Sun) 18:28
00:04:00
Boise, ID

 



## DSM (5)
(208) ▮▮▮▮

 View contact

(208) ▮▮▮▮
MOBILE



Email 

📞 → **Sep 20 (Sun) 18:42**
00:00:39
Boise, ID

📞 → **Sep 20 (Sun) 18:42**
00:00:11
Boise, ID

📞 → **Sep 20 (Sun) 18:41**
00:00:10
Boise, ID

📞 ← **Sep 20 (Sun) 18:33**
00:07:16
Boise, ID

 

| | |
|---|---|
| **From:** | Nick Almquist <nalmquist@ci.snoqualmie.wa.us> |
| **Sent:** | Thursday, October 01, 2015 4:17 PM |
| **To:** | Tony Matthews |
| **Cc:** | Steve McCulley |
| **Subject:** | Request for Investigation |
| **Attachments:** | Screenshot_2015-09-29-23-10-29.png; Screenshot_2015-09-29-23-10-16.png; Dad 20SEP2015.m4a |

Tony-

I left you a voice mail concerning this request today.

Please call me for additional details.

Thank you,

NICK

**Captain Nick Almquist**
Snoqualmie Police Department
34825 SE Douglas Street
Snoqualmie, WA 98065
Desk: 425-831-4360
Cell: 425-999-1522
Fax: 425-831-6121

"Leaders become great, not because of their power, but because of their ability to empower others."
      **-John Maxwell**



Providing Police Services for the City of North Bend



1